IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BILAL HASANIE HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED CORRECTIONAL | ) | |
| HEALTHCARE, INC.; PHELPS COUNTY | ) | Case No. 4:20-cv-00804-JMB |
| SHERIFF'S DEPARTMENT; PHELPS | ) | |
| COUNTY JAIL; SHERIFF RICHARD L. | ) | |
| LISENBE, Individually and in His Official | ) | JURY TRIAL DEMANDED |
| Capacity as Sheriff of Phelps County; DR. | ) | |
| ARTHUR BENTLEY, Individually and in His | ) | |
| Official Capacity as a Medical Services | ) | |
| Provider at Phelps County; DIONNE | ) | |
| KELLEY; KELLY RATCLIFF, SERGEANT | ) | |
| GLENN; DOES 1-15, | ) | |
| | | |
| Defendants. | | |

## AMENDED COMPLAINT

COMES NOW Plaintiff, Bilal Hasanie Hill, by and through undersigned counsel, and for his

Amended Complaint against Defendants Advanced Correctional Healthcare, Inc., Phelps County,

Missouri Sheriff's Department, Phelps County, Missouri Jail, Sheriff Richard L. Lisenbe, Dr. Arthur

Bentley, Dionne Kelley, Officer Kelly Ratcliff, Sergeant Glenn, Lieutenant Joe Taylor, and Does 1-

15, filed pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), states and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for damages brought to redress the deprivation, under color of state

law, of rights, privileges and immunities secured to Plaintiff by provisions of the Eighth Amendment

of the United States Constitution.

1

2.      Plaintiff alleges that while housed at the Phelps County, Missouri Jail between the approximate dates of October 4, 2019 and April 3, 2020, Plaintiff suffered from serious medical needs that were so obvious that even a layperson would easily recognize the necessity for a doctor's attention to those needs and that were subsequently diagnosed by physicians as complications resulting from terminal lung cancer and have required numerous treatments.

3.      Plaintiff alleges that while housed at the Phelps County, Missouri Jail, Defendants, under color of state law and with deliberate indifference, failed to provide the medical care or direct that the medical care be provided and allow Plaintiff to obtain the medical care needed within a reasonable time.

4.      As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's serious medical needs, Plaintiff's now-terminal lung cancer diagnosis was irreversibly delayed and he suffered extensive pain prior to and after that diagnosis.

5.      Plaintiff's injuries are the result of Defendants' deliberate and continued indifference for the known, obvious, and excessive risks to Plaintiff's health and safety, denial of access to adequate medical care, and treatment for Plaintiff.

6.      Defendants acted under color of state law in deliberately disregarding the known risks to Plaintiff's health, denying adequate access to medical care and treatment for Plaintiff, and failing to direct that medical care be provided thereby denying Plaintiff his constitutional rights and violating the Eighth Amendment of the United States Constitution.

**JURISDICTION AND VENUE**

7.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff presents federal claims arising under the Eighth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983.

8.     This Court has jurisdiction over Defendants because the unlawful acts alleged in this Amended Complaint were committed in Rolla, Phelps County, Missouri, which lies within the Eastern District of Missouri.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 105(b) and 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Rolla, Phelps County, Missouri, which lies within the Eastern District of Missouri.

**PARTIES**

10.     Plaintiff Bilal Hasanie Hill's ("Plaintiff") current residence and domicile is in North Carolina.

11.     Defendant Phelps County, Missouri Jail is operated by the Correctional Division of Defendant Phelps County, Missouri Sheriff's Department.  The Phelps County, Missouri Jail and the Phelps County, Missouri Sheriff's Department (collectively, "Phelps County") are located in Rolla, Phelps County, Missouri.  Phelps County has an obligation under the United States Constitution to provide adequate medical care to those individuals whom it punishes by incarceration—including Plaintiff—and for all relevant times contemplated herein, acted under color of state law.

12.     Advanced Correctional Healthcare, Inc. ("ACH") was, and is, a corporation authorized to do business within the jurisdiction of the Rolla, Phelps County, Missouri, which lies in the Eastern District of Missouri.  ACH was duly organized, created, and exists under and by virtue of the laws of

3

the State of Illinois, with its principal place of business located in the State of Illinois.  Defendant ACH regularly conducts business in Rolla, Phelps County, Missouri, which lies in the Eastern District of Missouri, in conjunction with Defendant Phelps County.

13.     Upon information and belief, and at all relevant times contemplated herein, ACH reached a meeting of the minds and/or mutual understanding, orally and/or in writing, with Phelps County to recruit, contract, employ, train, compensate, and supervise medical professionals to provide medical services including, but not limited to, examinations, treatment, and care to all of the inmates housed at the Phelps County, Missouri Jail at least between the approximate dates of October 4, 2019 and April 3, 2020.  Accordingly, ACH was a willing participant with Phelps County and/or its agents in the joint action that violated Plaintiff's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under color of state law for purposes of this lawsuit under 42 U.S.C. § 1983.

14.     Upon information and belief, and at all relevant times contemplated herein, ACH reached a meeting of the minds and/or mutual understanding, orally and/or in writing, with Phelps County and/or its agents regarding the specific medical services including, but not limited to, examinations, treatments, and care, or lack thereof, that would be provided to Plaintiff, or those inmates similarly situated, at least between October 4, 2019 and April 3, 2020.  Accordingly, ACH was a willing participant with Phelps County and/or its agents in the joint action that violated Plaintiff's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under color of state law for purposes of this lawsuit under 42 U.S.C. § 1983.

15.     ACH, through its employees, agents, or partners, and in conjunction with and pursuant to its meeting of the minds, mutual understanding, and joint action with Phelps County, exercised

4

control over the medical policies, customs, and procedures that directly resulted in the deliberate indifference to Plaintiff's serious medical needs.

16.     Each of the following individuals is a Missouri resident and was contracted and/or employed by ACH and/or Phelps County to provide correctional services and/or medical services to inmates housed at the Phelps County, Missouri Jail where Plaintiff was confined and where the acts and omissions that give rise to his claims occurred.  As such, at all relevant times contemplated herein and while acting under the color of state law, the below-listed parties materially participated in deliberately disregarding Plaintiff's serious medical needs by failing to provide the medical care or direct that the medical care be provided or allow Plaintiff to obtain the medical care needed within a reasonable time including, but not limited to, certain examinations, treatment, and care:

     a.   Dr. Arthur Bentley ("Dr. Bentley");

     b.   Nurse Dionne Kelley ("Nurse Kelley");

     c.   Sheriff Richard L. Lisenbe ("Sheriff Lisenbe");

     d.   Sergeant Glenn;

     e.   Officer Kelly Ratcliff ("Officer Ratcliff");

     f.   Lieutenant Joe Taylor  ("Lieutenant Taylor"); and

     g.   Does 1-15, employees and/or contractors of Phelps County Jail and/or the Phelps County Sheriff's Department.

17.     Upon information and belief, Defendant Dr. Bentley reached a meeting of the minds and/or mutual understanding, orally and/or in writing, with ACH and/or Phelps County to provide medical services to inmates housed at the Phelps County, Missouri Jail, including the approximate period between October 4, 2019 and April 3, 2020.  In his capacity as an employee or contractor for

ACH and/or Phelps County, Dr. Bentley did provide medical services, or lack thereof, including, but not limited to, examinations, treatment, and care to all inmates housed at the Phelps County, Missouri Jail—including Plaintiff—for the approximate period between October 4, 2019 and April 3, 2020. Accordingly, Dr. Bentley was a willing participant with ACH and Phelps County and/or their agents in the joint action that violated Plaintiff's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under color of state law for purposes of this lawsuit under 42 U.S.C. § 1983.

18.     Upon information and belief, Defendant Nurse Kelley reached a meeting of the minds and/or mutual understanding, orally and/or in writing, with ACH and/or Phelps County to provide medical services to inmates housed at the Phelps County Jail for the approximate period between October 4, 2019 and April 3, 2020.  In her capacity as an employee or contractor for ACH and Phelps County, Nurse Kelley did provide medical services, or lack thereof, including, but not limited to, examinations, treatment, and care to all inmates housed at the Phelps County, Missouri Jail—including Plaintiff—for the approximate period between October 4, 2019 and April 3, 2020. Accordingly, Nurse Kelley was a willing participant with ACH and Phelps County and/or their agents in the joint action that violated Plaintiff's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under color of state law for purposes of this lawsuit under 42 U.S.C. § 1983.

19.     Upon information and belief, Defendant Sheriff Lisenbe was the lead supervisor and/or director of the Phelps County, Missouri Jail and/or Phelps County, Missouri Sheriff's Department, with job duties which included the facilitation and supervision of the medical services provided to all

inmates of the Phelps County, Missouri Jail, including Plaintiff, during the approximate period between October 4, 2019 and April 3, 2020.

20.     Upon information and belief, Defendant Sergeant Glenn was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Plaintiff, during the approximate period between October 4, 2019 and April 3, 2020.

21.      Upon information and belief, Defendant Officer Ratcliff was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Plaintiff, during the approximate period between October 4, 2019 and April 3, 2020.

22.     Upon information and belief, Defendant Lieutenant Taylor was employed by Phelps County and provided services in that capacity including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Plaintiff, during the approximate period between October 4, 2019 and April 3, 2020.

23.     Upon information and belief, Defendants Does 1-15 were employed by and/or contracted with ACH and Phelps County and provided services in that capacity including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Plaintiff, during the approximate period between October 4, 2019 and April 3, 2020.

## BACKGROUND

24.     In early April of 2020, Plaintiff Bilal Hill was diagnosed with terminal, stage IV lung adenocarcinoma after Defendants denied him adequate medical treatment for months despite his frequent and urgent requests for treatment and observably deteriorating physical condition.

25.     Lung cancer is the most common cancer worldwide.  Lung cancer incidence is tightly linked with cigarette smoking.  Plaintiff reported a history of smoking one pack of cigarettes per day when screened at admission to Phelps County Jail in October 2019.

26.     Plaintiff's lung cancer arose in the apical (upper) portion of the lung.  Lung cancers that begins in this part of the lung are known as Pancoast tumors.  As Pancoast cancer grows, it compresses the surrounding nerves in an individual's left shoulder and neck, eventually causing severe and unrelenting shoulder and arm pain—much like the pain Plaintiff reported to Phelps County employees and medical staff on January 13, 2020, 81 days before he was diagnosed by outside medical providers.  If untreated, the cancer continues to compress the shoulder and brachial area nerves, eventually resulting in nerve impingement.

27.     Another typical symptom of lung cancer as the cancer grows is chest pain.  Plaintiff reported chest pain to Phelps County employees and medical staff on January 25, 2020, 69 days before he was diagnosed by outside medical providers.

28.     Without treatment, lung cancer spreads directly and through the blood circulation and lymphatic systems.  By February 20, 2020, Plaintiff could feel a knot in the left area of his neck, which he reported to Phelps County employees and medical staff.  Dr. Bentley confirmed the presence of an enlarged lymph node in Plaintiff's neck on February 26, 2020, 37 days before Plaintiff was diagnosed

by outside medical providers.  This lymph node never returned to normal, and was eventually biopsied by outside medical providers on April 3, 2020 to confirm Plaintiff's cancer diagnosis.

29.     As untreated cancer grows and spreads, it becomes increasingly metabolically active. This typically results in weight loss.  Unintentional weight loss of 10 pounds or more is commonly experienced by patients with lung cancer.  By February 26, 2020, 37 days before Plaintiff was diagnosed by outside medical providers, Plaintiff had lost 14 pounds in less than a month.  By April 1, 2020, Plaintiff had lost 28 pounds in slightly more than 2 months.  When finally sent for outside evaluation on April 3, 2020, Plaintiff had extensive metastases in the neck, mediastinum, thoracic vertebral bones, and retroperitoneum.

30.     Early diagnosis of lung cancer before extensive metastases occurs greatly increases the chance for a cure or longer survival.  Plaintiff was eventually diagnosed with lung adenocarcinoma. Adenocarcinoma typically has the slowest doubling rate of the three major types of lung cancer, and has a 5-year survival rate as high as 70 to 80% if diagnosed before metastases.

31.     Plaintiff presented with multiple symptoms typical of lung cancer in January 2020, including a cigarette smoking history, intractable shoulder pain, and chest pain.  If lung cancer is a possible diagnosis, the first test done is typically a chest X-ray.  Pancoast lung cancer appears on a chest X-ray as an apical mass or as increased size of the apical cap.  Plaintiff requested a chest X-ray on January 21, 2020, but did not receive any chest radiology until over two months later on April 3, 2020.  By the point, his lung cancer had extensively metastasized and he had stage IV cancer.

32.     Ultimately, outside medical professionals diagnosed Plaintiff with terminal cancer, estimating he had three months left to live.

**GENERAL ALLEGATIONS**

9

33.     At some point prior to October 4, 2019, ACH reached a meeting of the minds and/or mutual understanding with Phelps County to recruit, contract, employ, train, compensate, and supervise medical professionals to provide medical services including, but not limited to, examinations, treatment, and care to all of the inmates housed at the Phelps County, Missouri Jail, including Plaintiff, at least between the approximate dates of October 4, 2019 and April 3, 2020.

34.     While awaiting trial in the United States District Court for the Western District of Missouri, Central Division, Plaintiff was initially housed at the Cole County Jail in Jefferson City, Missouri.

35.     On or about November 17, 2018, Cole County Jail recorded Plaintiff's weight as 205 pounds and noted Plaintiff smoked one pack of cigarettes per day.

36.     On or about October 4, 2019, Plaintiff transferred to the Phelps County Jail in Rolla, Missouri.

37.     Plaintiff has a long history of heavy cigarette smoking, which Plaintiff reported to the Cole County Jail on or about November 17, 2018 and the Phelps County Jail on or about October 8, 2019.

38.     On or about October 4, 2019, Screening Officer Ratcliff completed a Phelps County Inmate Screening form for Plaintiff, noting Plaintiff's complaints of intermittent pain and his diagnosis by Cole County Jail of a sports hernia.

39.     On or about October 8, 2019, Plaintiff self-reported to Phelps County that he smoked one pack of cigarettes per day.

40.     Also on or about October 8, 2019, Phelps County medical staff recorded Plaintiff's weight at 196.5 pounds.

41.     On or about January 13, 2020, Plaintiff submitted a Medical Services Request ("MSR") to Phelps County staff, in which he complained of extreme back and neck pain shooting from his shoulder blade to his neck.

42.     On or about January 13, 2020, Dr. Bentley reported Plaintiff's shoulder and neck pain had been present for approximately one week, the area was tender to the touch, and Plaintiff reported constant pain.

43.     At the conclusion of the visit described in Paragraph 42, above, Dr. Bentley prescribed Plaintiff 1000 milligrams of Tylenol, to be taken twice daily for three days.  Dr. Bentley further instructed Plaintiff to see a nurse the following day.

44.     On or about January 14, 2020, a handwritten progress note in Phelps County records indicates Plaintiff complained of pain between his shoulder blades and down the center of his back, and reported that his discomfort began two weeks prior.  The handwritten progress note further indicated Plaintiff weighed 196 pounds.

45.     On or about January 15, 2020, Plaintiff was prescribed a prednisone "taper."

46.     On or about January 21, 2020, Plaintiff submitted another MSR indicating his level of pain was increasing and he was beginning to have muscle spasms and requesting that X-rays be performed.

47.     On or about January 25, 2020, four days after submitting the MSR described in Paragraph 46, above, Plaintiff reported chest pain described as sharp pain under his left nipple in addition to his shoulder and neck pain.  Dr. Bentley prescribed one 400 milligram dose of Tylenol.

48.     On or about January 27, 2020, a handwritten progress note indicated Plaintiff continued to have chest, shoulder, and back pain.

11

49.     On or about February 6, 2020, Plaintiff completed an Inmate Grievance Form ("IGR") complaining he had been in extreme pain for the past month and was unable to sleep.  Plaintiff requested to be taken to the emergency room.

50.     Lieutenant Taylor spoke with Nurse Kelly regarding Plaintiff's February 6, 2020 IGR wherein Plaintiff indicated that he was in extreme pain and that his Eighth Amendment rights to be free from cruel and unusual punishment were being violated by Defendants' deliberate indifference to his plain, obvious, and serious medical needs.  Lieutenant Taylor responded in writing that he would put Plaintiff on the jail doctor's "list for next week."

51.     On or about February 12, 2020, a handwritten progress note indicated Plaintiff's complaints of upper back pain and that Plaintiff's weight had fallen to 190 pounds.

52.     On or about February 12, 2020, Plaintiff completed another IGR, noting he had been in extreme pain for over a month and he had completely exhausted the grievance procedure.  Plaintiff further noted he had asked on several occasions to be seen by an outside care provider.  Defendants deliberately disregarded his requests.

53.     On or about February 17, 2020, Plaintiff completed another IGR, noting he had been suffering from extreme pain for over 30 days "due to some sort of neck, back and shoulder injury." Plaintiff further noted his ongoing request to be seen by a physician "that can run the proper tests to pinpoint what needs to be done," but Defendants again deliberately disregarded his requests.

54.     On or about February 20, 2020, Plaintiff completed another MSR, noting he had "what feels to be a growth in [his] neck in one of the areas [he] complained to be in severe pain."

55.     On or about February 21, 2020, a handwritten note initialed by a doctor and nurse indicated Plaintiff's weight had dropped to 180 pounds.

56.     On or about February 26, 2020, a handwritten note indicated Plaintiff's lymph node was swollen to the size of peanut, and that Plaintiff weighed only 182 pounds, a loss of 14 pounds since January 27, 2020.

57.     On or about February 26, 2020, Lieutenant Taylor received a grievance from Plaintiff indicating that he was dealing with issues in his rotator cuff, bicep tendon, and back.  Shortly thereafter, Lieutenant Taylor contacted ACH—the Phelps County, Missouri Jail's contracted health care provider—for additional assistance regarding Plaintiff's case.

58.     On or about March 5, 2020, approximately two months after Plaintiff's first complaint of extreme shoulder and neck pain, Lieutenant Taylor, and not the licensed medical professionals who were providing "treatment" to Plaintiff—e.g., Dr. Bentley and Nurse Kelley—finally called ACH employee Jennifer Nolawski, who served as the Regional Nurse Manager for ACH's Southwestern District.  Lieutenant Taylor—and not Dr. Bentley or Nurse Kelley—explained to Jennifer Nowalski, "what was going on with Mr. Hill and [his] concerns."  Rather than recommend that Plaintiff receive appropriate medical treatment such as X-rays, a CT scan, or CAT scan by an outside medical provider, ACH employee Jennifer Nolawski "suggested a review of Mr. Hill's medical records by a Doctor Review Board at ACH."

59.     Lieutenant Taylor agreed with ACH employee Jennifer Nolawski's recommendation and "requested that it be done."

60.     On or about March 7, 2020, Plaintiff completed another MSR, noting: the pain in his bicep hurt so badly he hadn't slept in days; his neck had swollen to a point that the swelling interfered with his breathing; and the pain in his neck and back had not diminished.  Plaintiff once again requested to receive emergency medical attention, and Defendants deliberately disregarded this request.

61.     On or about March 8, 2020, a handwritten progress note indicated Plaintiff's weight had fallen to 175 pounds, a decrease of 21 pounds since January 27, 2020.

62.     On March 9, 2020, Lieutenant Taylor received the results of the ACH review conducted by Dr. Schamber.  Dr. Schamber found that Plaintiff, based on the record, "is receiving objectively reasonable care based on the complaints given." Rather than recommend any alternative treatment methods, Dr. Schamber suggested that Lieutenant Taylor create an "activity log" to determine if Plaintiff's "subjective complaints," which had been ongoing and constant for about two months, matched his "activity level."

63.     On or about March 17, 2020, approximately eight days after Lieutenant Taylor received the ACH review board findings, Plaintiff was moved to a holding cell and placed on "medical watch."

64.     On or about March 20, 2020, a nurse completed a handwritten progress note that indicated Plaintiff complained of left shoulder pain and stated he had minimal relief to his shoulder or back pain from the doctor-prescribed Tylenol.  The record also notes Plaintiff's heart rate was up to 112 beats per minute.

65.     On or about March 27, 2020, a nurse completed a handwritten progress note that indicated Plaintiff complained of a new onset of chest pain and had audibly rapid breathing secondary to discomfort.  Plaintiff described the pain as a stabbing pain.  His pulse was recorded as 130 and 139 beats per minute.  Dr. Bentley prescribed 1000 milligrams of Tylenol, to be taken twice daily.

66.     On or about March 30, 2020, Plaintiff submitted yet another MSR, indicating he was "still in severe pain in [his] upper back and left arm" and 75% of his left arm was numb as he continued to lose mobility in that arm.  Plaintiff requested an MRI.

14

67.     On or about April 1, 2020, a handwritten progress note indicated that Plaintiff weighed 168 pounds—a decrease of 28 pounds since January 27, 2020 and 37 pounds since November 17, 2018. Plaintiff continued to complain of left back trapezius and left arm pain.  The practitioner noted that a reason for the severe pain had not been found and staff planned to refer Plaintiff to an emergency room for evaluation.

68.     On or about April 3, 2020, at least 10 weeks after Plaintiff's first complaints of severe pain, Phelps County medical staff referred Plaintiff to the Phelps County Hospital emergency room for evaluation.  After evaluation, he was transferred to Cox Health in Springfield, Missouri.

69.     Also on or about April 3, 2020, medical staff at Cox Health in Springfield, Missouri assessed a need for a biopsy given Plaintiff's symptoms and medical history, noting that Plaintiff may have lymphoma or lung cancer and recommending a biopsy.

70.     In a pathology report prepared on or about April 3, 2020, medical staff at Cox Health in Springfield, Missouri noted that Plaintiff's pathology results were "diagnostic for a poorly-differentiated non-small cell adenocarcinoma."

71.     In a radiology report prepared on or about April 3, 2020, Cox Health medical staff reported abnormal findings, noting that the "[m]ost prominent abnormality is large mass involving left lower neck, left axilla, and left upper mediastinal areas."

72.     At the time Plaintiff was evaluated at Cox Health, he was reporting pain levels at an 8 on a scale of 1 to 10.

73.     On or about April 9, 2020, Plaintiff was discharged from Cox Health.  Plaintiff's discharge report from Cox Health noted a diagnosis of non-small cell lung cancer with metastasis.  He

required multiple medications, including fentanyl, gabapentin, hydromorphone, and lidocaine to control his pain.  Medical staff further noted that Plaintiff had less than three months of life.

74.     Plaintiff submitted at least eight MSRs and grievances over the course of his incarceration at Phelps County Jail, putting Defendants on notice of his increasingly urgent medical condition over a period of several months.

75.     Over the course of at least ten weeks of Plaintiff's increasingly urgent complaints, Defendants deliberately or recklessly disregarded telltale signs of the severity of Plaintiff's condition, including but not limited to: the location of his pain complaints; the severity and constant nature of his pain complaints; Plaintiff's rapid weight loss; and Plaintiff's history of heavy tobacco use.

76.     Due to Defendants' deliberate disregard for or indifference to Plaintiff's serious medical needs and continued denial of adequate healthcare, Plaintiff suffers from a once treatable, but now terminal cancer and ongoing pain.

77.     Due to Defendants' deliberate disregard for or indifference to Plaintiff's serious medical needs, Plaintiff suffered from a delay in adequate medical treatment that caused him months of suffering prior to receiving the necessary and requested medical intervention.

**COUNT I:**
**SECTION 1983: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED**
**Defendants Doctor Arthur Bentley, Nurse Dionne Kelley, Sheriff Richard L. Lisenbe, Sergeant Glenn, Officer Kelly Ratcliff, Lieutenant Joe Taylor, and Does 1-15, each in their individual capacities (the "Individual Defendants")**

78.     Plaintiff incorporates the general allegations 1-77 above as if fully set forth herein.

79.     Throughout his incarceration at the Phelps County Jail, Plaintiff suffered from a serious medical need, which ultimately developed into a terminal illness—stage IV lung cancer.

Case: 4:20-cv-00804-JMB   Doc. #:  30   Filed: 08/12/20   Page: 17 of 23 PageID #: 141

80.    The Individual Defendants were each made aware of Plaintiff's serious medical need through several avenues, including but not limited to Plaintiff's repeated oral requests for medical assistance to correctional officers and medical staff, written requests to medical staff, and observably deteriorating physical condition.

81.    Each of the Individual Defendants, while acting under color of law as employees of or contractors for ACH and/or Phelps County, deliberately disregarded Plaintiff's serious medical needs relating to his lung cancer in numerous ways, including but not limited to, deliberately disregarding Plaintiff's obvious need for (i) additional medical treatment, including X-rays, an MRI, and (ii) referral to an outside physician for a timely diagnosis and other appropriate medical care.

82.    Each of the Individual Defendants, while acting under color of law as employees of or contractors for ACH and Phelps County, deliberately disregarded Plaintiff's serious medical needs relating to his lung cancer by failing to provide the medical care or direct that the medical care be provided or allow Plaintiff to obtain the medical care needed within a reasonable time.

83.    As a direct result of the Individual Defendants' deliberate indifference, Plaintiff suffered serious, and eventually terminal, injury.

84.    The Individual Defendants' acts and omissions were not only intentionally willful, wanton, reckless, and malicious but they also evince a complete and deliberate indifference to and a conscious and reckless disregard of the rights of Plaintiff.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish Defendants or to deter Defendants and others from like conduct in the future.

85.    Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Individual Defendants as provided by 42 U.S.C. § 1988.

17

**COUNT II:**
**SECTION 1983: UNCONSTITUTIONAL POLICY, CUSTOM, OR**
**FAILURE TO TRAIN OR SUPERVISE**
**Defendants Advanced Correctional Healthcare, Inc.; Phelps County Sheriff's Department;**
**Phelps County, Missouri Jail; Sheriff Richard L. Lisenbe, in his official capacity; and Dr.**
**Arthur Bentley, in his official capacity**

86.     Plaintiff incorporates the allegations 1-85 above as if fully set forth herein.

87.     ACH and Phelps County reached a meeting of the minds and/or mutual understanding, at some point prior to October 4, 2019, to recruit, contract, employ, train, compensate, and supervise medical professionals to provide medical services including, but not limited to, examinations, treatment, and care to all of the inmates housed at the Phelps County, Missouri Jail, including Plaintiff. Accordingly, ACH was a willing participant with Phelps County and/or its agents in the joint action that violated Plaintiff's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under color of state law for purposes of this lawsuit under 42 U.S.C. § 1983.

88.      ACH and/or Phelps County reached a meeting of the minds and/or mutual understanding with Dr. Bentley to provide medical services including, but not limited to, evaluations, diagnosis, treatment, and care to all inmates housed at the Phelps County, Missouri Jail for the approximate period between October 4, 2019 and April 3, 2020—including Plaintiff.

89.     During the time Plaintiff was housed at the Phelps County, Missouri Jail, ACH, Phelps County, and/or Dr. Bentley had oversight and supervisory responsibilities over the Phelps County, Missouri Jail's medical policies, customs, procedures, and medical staff, including Nurse Kelley.

90.     During the time Plaintiff was housed at the Phelps County Jail, Sheriff Lisenbe had direct supervisory and oversight responsibilities over ACH's and Phelps County's policies, customs, procedures, and staff, including, but not limited to, the policies and customs related to medical

treatment for inmates, Plaintiff included, and the staff with responsibilities related to the inmate grievance and medical service request processes.

91.     ACH's and Phelps County's policies, procedures, customs, practices, and actions – which, through the conduct and deliberate omissions of its employees and agents, including but not limited to Dr. Bentley, Nurse Kelley, Sheriff Lisenbe, Sergeant Glenn, Officer Kelly Ratcliff, Lieutenant Joe Taylor, and Does 1-15, were so widespread and persistent as to represent official policy – recklessly disregarded substantial risks of serious harm to inmates and inflicted injuries that are actionable under 42 U.S.C. § 1983.

92.     ACH and Phelps County's collective abdication of policy-making and oversight responsibilities and/or its inadequate policies, procedures, customs, practices, and actions – as well as its inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies – reached the level of deliberate indifference and resulted in a constitutional injury manifesting itself in the unnecessary and wanton infliction of pain because of their collective and tacit authorization of personnel misconduct.

93.     More specifically, ACH and Phelps County's inadequate policies, procedures, customs, practices, and actions – as well as their inadequate training, supervision, direction, and control that, if effective, would have eliminated those systemic deficiencies – permitted:

        a.     Failures to provide professional medical judgment and care that would be ordered by outside treating physicians;

        b.     Failures to note urgent conditions or conditions that necessitate regular assessment, monitoring, and follow-up;

        c.     Delays or non-responses to noted urgent conditions;

        d.     Failures to assure timely access to care by requiring inmates to submit multiple MSRs to be evaluated by a physician, if at all;

e. Failures to provide cogent nursing directives for prioritizing MSRs and sick calls;

f. Failures to assure staff competency, especially among physicians and nurses, including the establishment of policies, procedures, and processes to detect and respond to incompetency;

g. Delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations;

h. Poor quality nursing, including failures to: note urgencies and conditions requiring further evaluation and treatment, schedule follow-up appointments for on-site care or off-site specialty care, and collect past medical records from prior treating physicians;

i. Failures to provide continuity of care by not documenting clinical observations, not properly diagnosing medical conditions, not providing adequate treatment; and not providing the care ordered by off-site treating physicians;

j. Utilizing "conservative" treatment methodologies unless or until a medical condition becomes emergent, in contravention of prevailing medical practices;

k. Belated or untimely authorization of off-site specialty medical care and treatment;

l. Failures to provide inmates with qualified medical opinions rendered by on-site and off-site physicians;

m. Failures to inform inmates of their conditions and diagnoses and to permit them to participate in decisions involving their care.

94. The systemic deficiencies listed above are the product of official policies, procedures, customs, practices, and actions that were promulgated or tacitly authorized by ACH and Phelps County and/or personnel vested with final decision-making authority – and all of them caused or materially contributed to the systemic and unconstitutional deliberate indifference to Plaintiff's serious medical needs and the unnecessary and the wanton infliction of pain he experienced.

95. ACH and Phelps County's official policies, procedures, customs, practices, and actions, which are the moving force behind Plaintiff's injuries, operated to deprive Plaintiff of the right

to adequate and appropriate diagnosis and treatment of his serious medical needs, and, but for the same, he would not have been deprived of rights secured by the Eighth Amendment.

96.     Collectively, ACH and Phelps County's acts and omissions not only contemplate a conscious disregard of a substantial risk of serious harm to inmate health and safety, but said acts and omissions are also sufficiently harmful to illustrate a deliberate indifference to the serious medical needs of Plaintiff and the other inmates in their charge.

97.     ACH and Phelps County's acts and omissions were not only intentionally willful, wanton, reckless, and malicious but they also evince a complete and deliberate indifference to and a conscious and reckless disregard of the rights of Plaintiff and all inmates in the custody of Phelps County who have Phelps County and/or Dr. Bentley and Nurse Kelley as their sole source of medical care.

98.     Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** for the foregoing reasons, Plaintiff requests that this Court after a trial by jury enter Judgment against Defendants for compensatory damages and exemplary or punitive damages proven at trial; for reasonable attorney fees, costs, and expenses incurred herein as provided by 42 U.S.C. § 1983; and for such further legal and equitable relief as the Court may deem just and proper.

Respectfully Submitted,

_/s/ Charles C. Eblen_
Charles C. Eblen, #55166
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard

21

Kansas City, MO  64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
ceblen@shb.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2020, the foregoing was filed electronically with the Clerk of the Court and will be served by operation of the Court's electronic filing system upon all attorneys of record.

/s/*Charles C. Eblen*
Charles C. Eblen
**ATTORNEY FOR PLAINTIFF**

23