# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BILAL HASANIE HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ADVANCED CORRECTIONAL ) | |
| HEALTHCARE, INC.; PHELPS COUNTY ) | Case No. 4:20-CV-00804-JMB |
| SHERIFF'S DEPARTMENT; PHELPS ) | |
| COUNTY JAIL; SHERIFF RICHARD L. ) | |
| LISENBE, Individually and in His Official ) | |
| Capacity as Sheriff of Phelps County; DR. ) | |
| ARTHUR BENTLEY, Individually and in His ) | |
| Official Capacity as a Medical Services ) | |
| Provider at Phelps County; DIONNE ) | |
| KELLEY; KELLY RATCLIFF, SERGEANT ) | |
| GLENN; LIEUTENANT JOE TAYLOR; ) | |
| DOES 1-15, ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR SANCTIONS

This case involves Defendants' mistreatment of Plaintiff Bilal Hasanie Hill while at the Phelps County Jail. Had Phelps County Jail personnel and Advanced Correctional Healthcare, Inc. ("ACH") medical staff not disregarded Mr. Hill's forty-pound weight loss, visible baseball-sized tumor, dramatic voice change, and nightly screaming and crying in pain for over 90 days, Mr. Hill's cancer would have be curable and his extreme pain avoided.

This motion seeks relief for ACH's suppression of information central to Mr. Hill's proof in this case—specifically, documents and information evidencing ACH's business focus on shielding liability and saving costs for correctional facilities versus providing adequate health-care to patients like Bilal Hill. To that end, Mr. Hill's counsel—from researching publically available information—knew that ACH has longstanding policies, customs, practices and training material

4823-8364-1302

aimed at cost and liability avoidance that result in trivializing inmate complaints to avoid any diagnostic testing and care outside of the jail.  ACH markets and brands itself as a company that helps jails avoid costs and legal liabilities. Indeed, ACH provides training videos and other materials to jails that Plaintiff believes train jail staff on cost and liability avoidance that also causes serious medical needs like Mr. Hill's to go untreated.[1]

Consistent with Plaintiff's theory regarding ACH's business practices, on September 18, 2020, Plaintiff served ACH with requests for production of documents which included, among other applicable requests, a request that ACH produce "Any and all training materials, manuals, protocols, scripts, guidelines, complaints, policies, policy manuals, and any other documents that in any way describe, relate outline, and/or govern the medical care that was provided to inmates at Phelps County."[2] Despite this discovery request focused on the central theory of Mr. Hill's case (and a continuing obligation to supplement discovery) ACH improperly withheld hundreds if not thousands of pages of relevant ACH-authored training materials and a series of training DVDs that are plainly covered by this request.  It did so by feigning ignorance to counsel and this Court as to what training Phelps County received from ACH and/or that Phelps County never received trainings or seminars from ACH.

We now know ACH's feigned ignorance and misrepresentations were false. On December 29, 2020, the Phelps County defendants served supplemental initial disclosures, exposing the existence of over 900 pages of ACH-authored training materials and training DVDs that were readily available to Jail employees. Were in not for the Phelps County supplemental disclosures, this Court and Plaintiff would have *no idea* that these highly material training

---

[1]    One such brochure and presentation is entitled "The Jail is Not a Health Spa."
[2]    First Requests for Production Directed to Defendant Advanced Correctional Healthcare, Inc. (the "First RFPs") No. 25 (Ex. A).

documents existed.  This conduct is particularly egregious in light of ACH's representations to counsel and this Court when Mr. Hill sought to compel this exact same information in a November 23, 2020 submission to this Court summarizing a discovery dispute.  As the Court can see, ACH had indeed provided to Phelps County the *very type of material Mr. Hill sought by title* in the discovery dispute summary to the Court – and yet *continues to this day* to withhold the material:

> Plaintiff Bilal Hasanie Hill has terminal lung cancer.  Mr. Hill contends that had Phelps County Jail personnel and Advanced Correctional Healthcare, Inc. ("ACH") medical staff not blown off his complaints for over three months to avoid costs, his cancer would have be curable, and he would not have endured three months of extreme pain.  For both its official capacity claim against ACH, and the intent element of Mr. Hill's claim for punitive damages against ACH, Mr. Hill contends that ACH has longstanding policies, customs, and practices aimed at cost and liability avoidance that result in trivializing inmate complaints to avoid any diagnostic testing and care outside of the jail.  From studying PACER, speaking to other lawyers and information on ACH's own website, Mr. Hill is aware that ACH markets and brands itself as a company that helps jails avoid costs and legal liabilities. This corporate focus on cost avoidance routinely causes people with serious medical needs to go untreated and needlessly suffer. <u>As one example, ACH provides brochures and presentations entitled "The Jail is Not a Health Spa." Similarly, ACH provides training videos and other materials to jails that Plaintiff believes train jail staff on cost and liability avoidance that also causes serious medical needs like Mr. Hill's to go untreated</u>. Mr. Hill is entitled to these materials to support his official capacity and punitive damages claim.

*See* November 23, 2020 Email Regarding Discovery Dispute (Ex. B); and Phelps County Disclosures Including "The Jail is Not a Health Spa."  (Ex. C).

Relatedly, in that same discovery dispute ACH steadfastly maintained that it had produced all communications related to ACH's second opinion regarding the adequacy of Mr. Hill's medical care.  Based on available information, Mr. Hill's counsel was highly skeptical about the accuracy of that representation and expressed as much to the Court in the hearing about that issue.  Not surprisingly, Mr. Hill's skepticism was validated when the Managing Nurse on the email string

conveying the second opinion confirmed there were more communications that had not been produced. *See* Nolawski Email to Joe Taylor (Ex. D); and Nolawski Dep. Tr. pp. 39:07-50:22 (Ex. E).

ACH had ample time and multiple opportunities to disclose these materials, including the *five times* it supplemented its responses to Plaintiff's First Requests for Production. Its wholesale refusal to disclose these relevant documents, and representations that they did not exist, ostensibly because of their content, supports a finding that Plaintiff's conduct was groundless and done in bad faith.

ACH's abuse of process, misrepresentations, and strategic refusal to provide hundreds of pages of relevant documentation have wasted Plaintiff's resources. By withholding these crucial, responsive documents, ACH deprived Mr. Hill of the opportunity to assess this information and make strategic decisions about how to approach five critical deponents, including four defendants, on them, including the ACH-contracted doctor and defendant, Dr. Bentley; the ACH-trainer, Ms. Nolawski; ACH nurse and defendant Dionne Kelley; ACH Director of Medical Services and defendant Travis Schamber; and Jail defendant Ms. Ratcliff.

ACH's conduct is egregious and warrants an appropriate sanction. Withholding documents that it knew were central to Mr. Hill's case theory and knew it had provided to the Jail is an abuse of process that warrants sanctions, including attorney's fees and an adverse instruction at trial informing the jury of ACH's misconduct. Nothing less will send ACH the message that this type of high-stakes, hide-the-ball conduct will not be tolerated.

## FACTUAL BACKGROUND WARRANTING SANCTIONS

Mr. Hill served his First Requests for Production Directed to Defendant Advanced Correctional Healthcare, Inc. (the "First RFPs") (Ex. A) on September 18, 2020. In these requests,

4

Mr. Hill explicitly requested training materials relating to the medical care at Phelps County, specifically:

- "Any and all documents that describe the policies, procedures, methods, and/or standards that govern or in any way relate to the process by which You review the care provided to inmates at the Phelps County Jail" (*Id.* at No. 23);

- "Any and all training materials, manuals, protocols, scripts, guidelines, complaints, policies, policy manuals, and any other documents that in any way describe, relate outline, and/or govern the medical care that was provided to inmates at Phelps County" (*Id.* at No. 25); and

- "Any and all training materials, manuals, protocols, scripts, guidelines, complaints, policies, policy manuals, and any other documents that in any way describe, relate, outline, and/or govern the medical care that was to be provided to inmates at Phelps County and were provided to Phelps County, Dr. Arthur Bentley, Nurse Dionne Kelley, Lieutenant Joe Taylor, or any correctional officers employed by Phelps County." (*Id.* at No. 26).

On October 14, 2020, ACH submitted its Answers and Objections to Plaintiff's Requests for Production (Ex. F). In response to Request No. 23, ACH objected and did not answer. In response to Request No. 25, ACH objected and affirmatively represented that "This Defendant does not have any documents responsive to this request." In response to Request No. 26, ACH objected, and attached an Exhibit "D" and "E" which ACH represented "are documents responsive to this request as they relate to Dr. Bentley or Nurse Kelley."[3]

No other training materials or communications were produced, and the sole remaining documents produced included a mere 22 pages including only (1) an employment agreement for Nurse Dionne Kelley, (2) an insurance policy, (3) ACH's contract with Phelps County, and (4) an employee confidentiality agreement for Dr. Bentley. While ACH supplemented its responses to these Requests five times, ACH failed to produce any of the at-issue training documents relating

---

[3]   "Exhibit D" mentioned in Response No. 26 (attached hereto as Ex. G), are training certifications for Dr. Bentley. "Exhibit E" mentioned in Response No. 26 (attached hereto as Ex. H), are training certifications for Nurse Dionne Kelley.

5

to Phelps County prior to, concurrent with, or anytime reasonably soon after receiving these Requests for Production, including in its five supplemental responses spanning from October through December. *See* ACH's First Supplemental (Ex. I) Second Supplemental (Ex. J), Third Supplemental (Ex. K), Fourth Supplemental (Ex. L), and Fifth Supplemental (Ex. M) Responses to Plaintiff's Requests for Production.

In a November 23, 2020 submission to this Court, Mr. Hill sought to compel ACH to disclose additional, responsive training documentation – the very documentation Mr. Hill now knows ACH withheld. As the Phelps County disclosures now confirm, ACH had indeed provided to Phelps County, and withheld from Mr. Hill, material Mr. Hill *explicitly sought* in the discovery dispute summary to the Court – down to the very title:

> Plaintiff Bilal Hasanie Hill has terminal lung cancer. Mr. Hill contends that had Phelps County Jail personnel and Advanced Correctional Healthcare, Inc. ("ACH") medical staff not blown off his complaints for over three months to avoid costs, his cancer would have be curable, and he would not have endured three months of extreme pain. For both its official capacity claim against ACH, and the intent element of Mr. Hill's claim for punitive damages against ACH, Mr. Hill contends that ACH has longstanding policies, customs, and practices aimed at cost and liability avoidance that result in trivializing inmate complaints to avoid any diagnostic testing and care outside of the jail. From studying PACER, speaking to other lawyers and information on ACH's own website, Mr. Hill is aware that ACH markets and brands itself as a company that helps jails avoid costs and legal liabilities. This corporate focus on cost avoidance routinely causes people with serious medical needs to go untreated and needlessly suffer. <u>As one example, ACH provides brochures and presentations entitled "The Jail is Not a Health Spa." Similarly, ACH provides training videos and other materials to jails that Plaintiff believes train jail staff on cost and liability avoidance that also causes serious medical needs like Mr. Hill's to go untreated.</u> Mr. Hill is entitled to these materials to support his official capacity and punitive damages claim.

*See* November 23, 2020 Email Regarding Discovery Dispute (emphasis added) (Ex. B); and Phelps County Disclosures Including "The Jail is Not a Health Spa." (Ex. C).

Notably, ACH's non-disclosure is not an isolated incident; rather, it is just one of many hide-the-ball maneuvers that have emerged throughout discovery. For example, in the same November 23, 2020 discovery dispute mentioned above, ACH promised, despite Mr. Hill's counsel's expressed skepticism, that it had produced all communications related to ACH's second opinion regarding the adequacy of Mr. Hill's medical care. Less than a month later, the truth was exposed when Nurse Nolawski confirmed there were more communications that ACH had not produced. *See* Nolawski Email to Joe Taylor (Ex. D); and Nolawski Dep. Tr. pp. 39:07-50:22 (Ex. E).

With ACH's discovery responses in hand, but unaware of the extent of their deficient nature, Plaintiff's counsel proceeded to take the depositions of a number of key defendants and witnesses, including:

- Phelps County Officer Kelly Ratcliff on October 7, 2020.
- ACH employee Dr. Travis Schamber on November 2, 2020.
- ACH employee Nurse Dionne Kelley on December 9, 2020.
- ACH employee Dr. Arthur Bentley on December 11, 2020
- ACH employee Jennifer Nolawski on December 15, 2020.

On December 29, 2020, Defendants Phelps County, Sheriff Richard L. Lisenbe, Lieutenant Joe Taylor, Kathleen Ratcliff, and Sergeant Deborah Glenn (the "Phelps County Defendants") served their Second Supplemental Initial Disclosures (Ex. C) under Rule 26(a)(1)(B). These disclosures revealed, for the first time in this litigation, over 900 pages of ACH-authored training documents and DVDs that ACH provided to Phelps County. Specifically, these Phelps County disclosures contained, among other things:

- Copies of ACH Jail Summits from 2015, 2016, 2017, 2018, and 2019;
- ACH's 2017 proposal for inmate medical services at the Phelps County Jail;
- Thirteen (13) ACH Advanced Training DVDs provided by ACH to Phelps County, including one aptly titled "A Jail is Not a Health Spa: The Legal Basis for Correctional Healthcare."

7

*See* Ex. C. These training documents further expose ACH's longstanding policies, customs, and practices aimed at cost and liability avoidance.

Without Phelps County's disclosures, Plaintiff would likely never have realized ACH's failure to produce these documents. By withholding – and continuing to withhold – these, and potentially other, crucial documents, ACH not only falsely represented that these documents did not exist, but ACH deprived Mr. Hill of the opportunity to meaningfully question five key witnesses and defendants regarding their content, and as a result, prevented Mr. Hill from advancing his case.

## LEGAL AUTHORITY REGARDING SANCTIONS

**A. ACH's did not produce its own training documents in violation of Rule 26(e), 26(g), and 37(c)(1).**

The Federal Rules of Civil Procedure are clear: a party must "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Rule 26(e)(1)(A); *Farm Journal, Inc. v. Johnson*, No. 4:19-CV-00095-SRB, 2019 WL 8405458, at *2 (W.D. Mo. Dec. 13, 2019).

Further, Rule 26(g) establishes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment. *See also Garrett v. Albright*, No. 4:06-CV-4137NKL, 2008 WL 681766, at *8 (W.D. Mo. Mar. 6, 2008) (Rule 26(g) "imposes on each party and their counsel a duty to responsibly engage in pretrial discovery."). In particular, Rule 26(g)(1) requires that every disclosure and discovery response "be signed by at least one attorney of record." This signature "certifies that to the best of the person's knowledge, information and belief formed *after a reasonable inquiry*" that a disclosure is "complete and correct as of the time

it is made" and that a discovery response is "consistent with the rules and existing law." Fed. R. Civ. P. 26(g)(1)(A)–(B) (emphasis added).

What is "reasonable" for Rule 26(g) purposes is "[u]ltimately . . . a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P. 26(g) Advisory Comm. Note to 1983 Amendment. The Rule 26(g) signature requirement "obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection," and "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.*

ACH's failure to produce the above-mentioned training documents violates Rule 26(e)'s mandate to timely supplement discovery responses, violates the certification requirement of Rule 26(g), and is a "failure to provide information" within the meaning of Rule 37(c)(1) because those documents are responsive to Mr. Hill's September 18, 2020 requests for production. (Ex. A). *See, e.g., Perkins v. Gen. Motors Corp.*, 129 F.R.D. 655, 666 (W.D. Mo. 1990), aff'd, 965 F.2d 597 (8th Cir. 1992) (finding plaintiffs violated Rule 26(g) by signing discovery responses that were not consistent with the Federal Rules of Civil procedure because they were not complete and accurate and ordering plaintiffs to pay defendant's reasonable expenses incurred because of the violation).

*White v. CitiMortgage, Inc.* is instructive here. In that case, defendant failed to timely produce a number of emails until July 2018 despite being responsive to plaintiff's requests for production from June 2014. *White v. CitiMortgage, Inc.*, No. 15-0289-CV-W-SRB, 2018 WL 4926306, at *3 (W.D. Mo. Oct. 10, 2018). The Court found defendant failed to comply with Rules 26(e) and (g), because defendant should have produced those emails in response to the 2014 requests or through a timely supplement. *Id.* The Court also found defendant's delay in producing the emails was a "failure to provide information" within the meaning of Rule 37(c)(1). *Id.* at *3.

Explaining that defendant's delay in producing the emails was not harmless, the Court found the emails were probative of plaintiff's MMPA claim, noting plaintiff would have likely used those emails in, for example, his motions and depositions. *Id.* Thus, "considering the deterrent and compensatory purposes of discovery sanctions," the Court ordered sanctions against defendant. *Id.*

Like in *White*, ACH has failed to produce countless training documents, videos and emails core to Plaintiff's case theory despite Plaintiff's clear and unambiguous request for them in September 2020. *See also Farm Journal, Inc. v. Johnson*, No. 4:19-CV-00095-SRB, 2019 WL 8405458, at *4 (W.D. Mo. Dec. 13, 2019) (imposing sanctions for defendant's evasive answers and failure to provide information pursuant to interrogatories, stating, "A clear question was asked. An evasive answer was given").

**B. ACH's intentional and evasive conduct warrants sanctions under Rule 26(g)(3) and 37(c)(1).**

The Rules pertinent to discovery authorize – and in this instance, *require* – courts to impose sanctions as a remedy for discovery abuse. The general purpose of discovery sanctions is "'to penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent.' " *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Accordingly, Rule 26(g)(3) states that "if a certification violates [Rule 26(g)] *without substantial justification*, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." (emphasis added).

Fed.R.Civ.P. 37(c)(1) "gives teeth" to Rule 26(a) requirements, giving a district court "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" if a party fails to comply with Rule 26. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir.

10

4823-8364-1302

2008). The purpose of sanctions under Rules 26(g) and 37(c) is "to deter abuse and compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.' " *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (quoting *In re Stauffer Seeds*, 817 F.2d 47, 50 (8th Cir. 1987)); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.").[4]

Here, sanctions are warranted and indeed, required, by Rule 26(g). ACH's initial and supplemental responses to Mr. Hill's requests for production were materially incomplete, and appear to have been designed to mislead. Accordingly, Rule 26(g)(3) requires a sanction be imposed. *See, e.g., Letterman v. Burgess*, No. 5:12-CV-06136-NKL, 2014 WL 12606484, at *7 (W.D. Mo. Feb. 21, 2014) (holding Rule 26(g)(3) required sanctions to be imposed against defendants who submitted materially incomplete responses to plaintiffs' interrogatories and awarding defendants attorney's fees).

Likewise, ACH's evasive and willful nondisclosure is the very type of misconduct that warrants sanctions under 37(c). *See, e.g., Claredi Corp. v. Seebeyond Tech. Corp.*, No. 4:04CV1304 RWS, 2007 WL 735018, at *3–4 (E.D. Mo. Mar. 8, 2007) (awarding sanctions under Rule 26(g)(3) and 37(c)). Rule 37(c) provides that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e)" and the failure is not "substantially justified" or "harmless," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)–(B).

---

[4] Likewise, even when not specifically prescribed by rule or statute, trial courts have broad, inherent power to fashion appropriate sanctions constituting for a wide variety of bad faith, vexatious, wanton, or oppressive conduct. *See Sylla– Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280 (8th Cir. 1995).

4823-8364-1302

No justification exists whatsoever for ACH's failure to produce their own, ACH-authored training materials provided to the Phelps County jail in light of Plaintiff's September 18, 2020 requests for production. Nor are ACH's hide-the-ball maneuvers harmless. Not only did ACH engage in conduct intended to convince Plaintiff no such documents existed, but ACH's failure to produce these training documents severely prejudiced Plaintiff. Specifically, ACH's deception foreclosed Plaintiff's counsel from fully and fairly deposing five (5) key defendants and witnesses, including ACH employees Dr. Bentley, Nurse Kelley, Dr. Schamber, and Ms. Nolawski, about these highly relevant documents during their depositions in October through December of 2020. Plaintiff's counsel would have used these training documents in each of these witnesses' depositions to obtain key admissions on ACH's longstanding policies, customs, and practices aimed at cost and liability avoidance that result in trivializing inmate complaints to avoid diagnostic testing and care outside of the jail. In sum, ACH's choice to withhold relevant documents accomplished the goal of stunting Plaintiff's ability to develop and advance his case theory.

### C. This Court should award Plaintiff monetary sanctions and an instruction informing the jury of ACH's misconduct.

Attorneys' fees are the first sanctioned envisioned under Rule 37(c)(1)(A), but the Rules also grant the Court authority to provide a special instruction to the jury prior to the introduction of evidence explaining ACH's failure to produce these relevant training documents. Fed. R. Civ. P. 37(c)(1)(A)–(B) (granting the court authority to "order payment of the reasonable expenses, including attorney's fees, caused by the failure" and to "inform the jury of the party's failure."). These are the minimum actions necessary to address ACH's, and/or their counsel's, wrongful conduct.

When determining appropriate discovery sanctions, "the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citing *Sellers v. Mineta*, 350 F.3d 706, 711–12 (8th Cir. 2003)). Both Rule 26(g)(3) and 37(c)(1) provide independent bases for discovery sanctions in this case. *See White v. CitiMortgage, Inc.*, No. 15-0289-CV-W-SRB, 2018 WL 4926306, at *3 (W.D. Mo. Oct. 10, 2018).

*White* again provides guidance here. *White*, 2018 WL at *4. Applying the *Wegener* factors, the Court found both attorney's fees and a jury instruction were appropriate sanctions. First, the Court found the defendant's purported reasons for noncompliance insufficient to defeat sanctions. *Id.* Second, the Court noted the "significant" surprise and prejudice to plaintiff caused by defendant's failure to produce the required documentation. *Id.* Specifically, the Court agreed the emails would have played an important role in several depositions and dispositive motions, and were exactly relevant to plaintiff's MMPA claim. *Id.*

Accordingly, the *White* court awarded plaintiff attorney's fees to compensate "for the impact that [d]efendant's conduct has had on any depositions conducted" in the case. *Id.* at *4 (ordering the parties to specify which depositions were affected by the delayed production, the actual time spent on those depositions, and the actual expense incurred as a result of defendant's conduct).

Likewise, the *White* Court approved the following special jury instruction before introduction of the withheld material into evidence at trial:

> You are about to hear testimony about emails involving Amy Cullen, a former employee of Defendant involved in the events that gave rise to this case. Under applicable Court Rules, Defendant was required to provide Plaintiff with certain emails to and from Amy Cullen that are relevant to this case. You will see some of

> these emails as exhibits admitted into evidence. Defendant was required to provide these emails in June 2014 but did not do so until July 2018.

*Id.* at *5. The Court held this instruction would serve the deterrent goals of Rule 26(g) and 37(c), finding the instruction mirrored similar instructions given by other district courts as a sanction for discovery rules violations. *Id.*[5]

As in *White*, the *Wegner* factors dictate that monetary sanctions and a jury instruction are appropriate here. ACH has no justification for its non-disclosure of ACH-authored training materials that it provided to Phelps County, and indeed, its misleading representations that no such documents exist militate against any finding that non-compliance was justified. Likewise, as is mentioned above, the training materials are vitally important to Plaintiff's case theory regarding ACH's custom and practice of engaging in cost and liability avoidance measures to deny needed healthcare to Phelps County inmates.

Thus. Mr. Hill requests this Court award him attorney's fees to compensate for the time spent on the instant motion, as well as the impact ACH's conduct has had on the five (5) depositions conducted so far in this case.

Further, Mr. Hill requests a jury instruction regarding ACH's failure to produce the subject materials. Mr. Hill proposes the following instruction:

---

[5] District courts in other circuits have likewise imposed sanctions in the form of an instruction to the jury that probative information was withheld in violation of discovery rules. *See Fanelli v. BMC Software, Inc.*, No. 1:11-CV-436-LMM, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (ordering discovery sanctions in the form of "provid[ing] a special instruction to the jury prior to the introduction of [a witness's] testimony explaining Defendant's failure to produce documents relevant to" a phone conversation that the witness had with the plaintiff until three years after discovery had opened); *F.T.C. v. AMG Servs., Inc.*, No. 2:12-CV-00536-GMN, 2014 WL 317781, at *12 (D. Nev. Jan. 28, 2014), objections overruled sub nom. *Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 212CV00536GMNVCF, 2014 WL 12788195 (D. Nev. July 16, 2014) (finding that the plaintiff violated Rules 26(a) and 26(e) and "grant[ing] Defendants the opportunity to 'inform he jury of [Plaintiff's] failure' to comply with its initial disclosure obligations until" after the close of discovery); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 09-1350, 2013 WL 6577401, at *12 (W.D. Pa. Dec. 16, 2013), aff'd, 598 F. App'x 109 (3d Cir 2015) (denying motion for new trial on several grounds, including that "the court's jury instruction that defendants were required but failed to produce the written documentation ... was appropriate and within the court's discretion").

4823-8364-1302

> You are about to hear testimony about materials Advanced Correctional Healthcare, Inc. used to train its employees and Phelps County Jail personnel. Under applicable Court Rules, Advanced Correctional Healthcare, Inc. was required to provide Plaintiff with these training materials. You will see some of these training materials as exhibits admitted into evidence. Advanced Correctional Healthcare, Inc. was required to provide these training materials to Plaintiff in September 2020 but was sanctioned for failing to do so.

This instruction reflects a correct application of a Rule 37(c)(1)(B) sanction because it focuses on ACH's discovery abuse without unfairly tipping the scales on any other matter in this case.

## **CONCLUSION**

The wrongful actions of Plaintiffs and their counsel are a fundamental disruption to the just, speedy and inexpensive determination of this action and have caused substantial prejudice to Mr. Hill. The sanctions and other relief requested by Mr. Hill are the only remedy for restoring order and fairness to the case.  Accordingly, Mr. Hill requests that the Court grant his Motion for Sanctions and afford any other relief as the Court deems just and proper.

Date:  January 14, 2021

                                      Respectfully Submitted

                                     */s/ Charles C. Eblen*
                                    Charles C. Eblen, #55166
                                    Brandon K. Gutshall, #61848MO
                                    SHOOK, HARDY & BACON L.L.P.
                                    2555 Grand Boulevard
                                    Kansas City, MO  64108-2613
                                    Telephone:  816-474-6550
                                    Facsimile:  816-421-5547
                                    ceblen@shb.com
                                    bgutshall@shb.com
                                    *Attorneys for Plaintiff*

## CERTIFICATE OF CONFERENCE

The undersigned counsel sent an email inviting conferral and outlining the basis for the motion on January 14, 2021 to both counsel for ACH and received no response. The undersigned sent a follow-up email to ACH's counsel inviting conferral on January 14, 2021 and again received no response.

                                                   /s/  Charles C. Eblen

## CERTIFICATE OF SERVICE

I, Charles C. Eblen, an attorney, hereby certify that on **January 14, 2021**, I caused a true and correct copy of the foregoing **Motion for Sanctions** to be served via Electronic Mail upon the following counsel of record:

John Terry Brooks
Michael G. Berry
NEWMAN COMLEY PC
601 Monroe Street
P.O. Box 537
Jefferson City, MO  65102
Telephone:  573-634-2266
brooksj@ncrpc.com
michaelberry@ncrpc.com

**ATTORNEY FOR DEFENDANTS PHELPS COUNTY SHERIFF'S DEPARTMENT; PHELPS COUNTY JAIL; SHERIFF RICHARD L. LISENBE; KELLY RATCLIFF; SERGEANT GLENN; AND LIEUTENANT JOE TAYLOR**

J. Thaddeus Eckenrode
Lisa Howe
ECKENRODE MAUPIN
11477 Olde Cabin Rd.
Suite 110
St. Louis, MO 63141
314-726-6670
Fax: 314-726-2106
jte@eckenrode-law.com
lhh@eckenrode-law.com

4823-8364-1302

**ATTORNEY FOR DEFENDANTS DR. ARTHUR BENTLEY, DIONNE KELLEY, AND ADVANCED CORRECTIONAL HEALTHCARE, INC.**

*/s/  Charles C. Eblen*

4823-8364-1302