UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILAL HASANIE HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:20 CV 804 JMB |
| ) | |
| PHELPS COUNTY SHERIFF'S ) | |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff's personal representative to substitute, pursuant to Rule 25, Fed.R.Civ.P. Defendants Advanced Correctional Healthcare, Inc. (ACH), Dr. Arthur Bentley, Dr. Travis Schamber, and Dionne Kelley (collectively, "the ACH defendants") oppose the motion.[1] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Bilal Hill was housed at the Phelps County Jail between October 2019 and April 2020, when he was diagnosed with terminal, stage IV lung cancer. He alleges that he was denied adequate medical treatment despite his deteriorating physical condition and frequent requests for medical care. On June 19, 2020, he filed this 42 U.S.C. § 1983 action asserting that defendants were deliberately indifferent to his serious medical needs (Count I) and that defendants maintain unconstitutional policies, customs, and/or fail to train or supervise (Count II). Upon his release from the jail in April 2020, plaintiff moved to North Carolina, where he resided when he filed this

---

[1] Plaintiff also names as defendants the Phelps County Jail, Sheriff Richard Lisenbee, Officer Kelly Ratcliff, Sergeant Glenn, and Lieutenant Joe Taylor (collectively, "the Phelps County defendants").

action. He died on January 14, 2021. His will names his sister, Lady Maakia Charlene Smith, as his personal representative. Ms. Smith seeks to be substituted as plaintiff in this matter.

**Discussion**

Under Rule 25(a), "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party" through a motion for substitution. Rule 25(a), Fed.R.Civ.P. Motions for leave should be freely granted. In re Baycol Prod. Litig., 616 F.3d 778, 783 (8th Cir. 2010) (citing Fed.R.Civ.P. 25, advisory committee note of 1963).

To determine whether plaintiff's claims survived his death and, therefore, are not extinguished, courts first look to federal law for an applicable rule of decision. Crabbs v. Scott, 880 F.3d 292, 294 (6th Cir. 2018) (§ 1983 case citing Robertson v. Wegmann, 436 U.S. 584, 588–95 (1978)). Federal law does not address "the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant." Robertson, 436 U.S. at 589 (quoting Moor v. County of Alameda, 411 U.S. 693, 702 n. 14 (1973)). Thus, the Court turns to the law of the forum state — Missouri, in this case — to determine whether plaintiff's claims survive his death. Generally, state survival statutes govern survival of personal injury actions. Andrews v. Neer, 253 F.3d 1052, 1056–57 (8th Cir. 2001) (discussing proper plaintiff to bring § 1983 claims). And, "state law governs **who** can be a 'representative' or 'successor,' and therefore, who can qualify as a proper party for substitution under Rule 25(a)(1)." In re Baycol Prod. Litig., 616 F.3d 778, 785 (8th Cir. 2010) (emphasis in original).

The parties do not dispute that plaintiff's 1983 claims survive his death. Their dispute centers on the identity of the proper substitute. The parties cite Missouri's wrongful death statute, found at § 537.080, which provides that:

> [w]henever the death of a person results from any act . . . which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the

> person or party who . . . would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) **By the spouse or children or the surviving lineal descendants** . . . .

Mo.Rev.Stat. § 537.080 (emphasis added).  Ms. Smith acknowledges that this statute does not permit wrongful death claims to be brought by personal representatives.  But, she asserts, North Carolina's wrongful death statute, N.C.Gen.Stat. § 28A-18-2(a), specifies that claims arising from the wrongful death may be brought only by the "personal representative or collector."  Ms. Smith argues that there is thus a conflict of law between Missouri and North Carolina.  Under Missouri conflict-of-laws rules, she argues, North Carolina has the most significant relationship to the issue and, therefore, North Carolina's wrongful death statute governs.  Defendants argue that Missouri has the most significant relationship with the issue.

The Court disagrees with the parties that the question of who may be the successor is governed by Missouri's wrongful death statute.  Rather, the Court believes that Missouri's survival statute applies.  Section 537.020 states:

> 1. Causes of action for personal injuries, **other than those resulting in death**, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death . . .; but in case of the death of [the party], such cause of action shall survive to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability of the measure of damages shall be the same as if the death or deaths had not occurred . . .
>
> 2. The right of action for death or the right of action for **personal injury that does not result in the death** shall be sufficient to authorize and to require the appointment of a personal representative by the probate division of the circuit court upon the written application therefore by one or more of the beneficiaries of the deceased . . .

Mo.Rev.Stat. § 537.020 (emphases added).

The Missouri Supreme Court explained that "[s]ections 537.020 and 537.080 are two sides of a single coin."  Mickels v. Danrad, 486 S.W.3d 327, 329–30 (Mo. 2016) (citing Wollen v.

3

DePaul Health Center, 828 S.W.2d 681, 685 (Mo. banc 1992) ("survivorship statute and the wrongful death statute are mutually antagonistic")). An action for personal injuries that result in death may only be brought under the latter statute, while actions "other than those resulting in death" may be brought under the former. Id. In Mickels, the family of Joseph Mickels brought a wrongful death action against Dr. Danrad for negligent failure to diagnose an incurable, terminal brain tumor. Dr. Danrad failed to detect the brain tumor in an MRI completed on December 2008. A CT scan was taken in February 2009 and Dr. Danrad diagnosed Mr. Mickels with the incurable brain tumor. Despite immediate surgery, Mr. Mickels died of the tumor in June 2019. His oncologist testified that Mr. Mickels would have lived an additional six months if the brain tumor had been detected earlier. Id. at 328. The trial court granted Dr. Danrad's motion for summary judgment, finding that plaintiffs failed to show that his alleged negligence resulted in Mr. Mickels' death as required by § 537.080, the wrongful death statute.

On review, the Missouri Supreme Court determined that the plaintiffs did not have a cause of action under the wrongful death statute because, although "Dr. Danrad's negligence certainly injured [Mr. Mickels], . . . it just as certainly did not kill him." Id. at 329. Rather, Mr. Mickels died of the brain tumor. But, the Supreme Court stated, "this does not mean that Dr. Danrad's negligence is not actionable." Id. While "Dr. Danrad's alleged negligence did not cause Mr. Mickels' death, . . . it surely injured him by depriving him of the opportunity to delay his death for up to six months." Id. And, "Mr. Mickels would have been able to sue Dr. Danrad for this negligence while he lived, and his personal representative can bring that action under section 537.020 after his death."[2] Id. at 329-30.

---

[2] The Court reasoned that allowing the negligence claim "to proceed as a wrongful death action rather than a medical malpractice action that survives under section 537.020" was contrary to precedent and the language of section 537.080, and, furthermore, "could have serious and far-

The Court is of the opinion that the identity of the proper party for substitution in this case is governed by § 537.020.  Before ruling on the pending motion, the Court will give the parties the opportunity to address the implications of applying Missouri's survival statute in this instance.

Accordingly,

**IT IS HEREBY ORDERED** that Ms. Smith shall submit a supplemental brief not later than April 16, 2021.  The ACH defendants shall file a response not later than April 23, 2021.

                                        */s/ John M. Bodenhausen*
                                        JOHN M. BODENHAUSEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of April, 2021.

---

reaching consequences" by requiring plaintiffs to prove "that 'but for' the defendant's negligence the decedent would not have died on the specific time and date," and "could thwart meritorious claims in the future."  For example, a defendant "could argue that, even when his or her negligence caused the decedent's death, some conduct of the decedent (or even a third person) either accelerated or delayed that death and, therefore, that conduct—not the defendant's negligence—was the "but for" cause of the decedent's specific date and time of death."  Id. at 331.