IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILAL HASANIE HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ADVANCED CORRECTIONAL ) | |
| HEALTHCARE, INC.; PHELPS COUNTY ) | Case No. 4:20-CV-00804-JMB |
| SHERIFF'S DEPARTMENT; PHELPS ) | |
| COUNTY JAIL; SHERIFF RICHARD L. ) | |
| LISENBE, Individually and in His Official ) | |
| Capacity as Sheriff of Phelps County; DR. ) | |
| ARTHUR BENTLEY, Individually and in His ) | |
| Official Capacity as a Medical Services ) | |
| Provider at Phelps County; DIONNE ) | |
| KELLEY; KELLY RATCLIFF, SERGEANT ) | |
| GLENN; LIEUTENANT JOE TAYLOR; ) | |
| DOES 1-15, ) | |
| ) | |
| Defendants. ) | |

**RENEWED MOTION FOR AN ADVERSE INFERENCE INSTRUCTION AND OTHER APPROPRIATE RELIEF AGAINST ADVANCED CORRECTIONAL HEALTHCARE**

Plaintiff renews his motion for an adverse-inference instruction against Advanced Correctional Healthcare, Inc.

**I.    Introduction and Factual Background.**

From mid-February to early-March 2020, Bilal Hill's health declined precipitously at the Phelps County Jail—so much so that even lay people with divergent perspectives (Jail employees; inmates; and witnesses speaking to Mr. Hill on audio and video) all acknowledged he was suffering, or, worse, feared he had a grievous medical condition. Defendant Kelly Ratcliff, for one, worked for the Jail and testified that she knew Mr. Hill was suffering and prayed for him, but that her "hands were tied" to help him because of Jail medical policy (which ACH designs and

requires the Jail to follow).  See Ex. A:  Kathleen Marie Ratcliff, October 7, 2020 Deposition, pp: 34:19-35:5.  And, critical to this renewed motion, Defendant Joe Taylor (the Jail Administrator and corporate 30(B)(6) designee for the Jail) also questioned whether ACH was doing its job because Mr. Hill's condition continued to deteriorate over many months under ACH's care (and the Jail's watch).  See Ex. B:  Joseph Taylor, April 30, 2021 Deposition, pp: 15:18-16:16.

So he asked ACH to review in mid-February 2020 why that was happening.  See Ex. C: Joseph Taylor, April 30, 2021 30(b)(6) Deposition, pp: 112:16-113:7.  ACH represented to the Phelps County Jail that it would conduct a medical "board review" of the adequacy of Mr. Hill's care.  Joseph Taylor April 30, 2021 Deposition, pp: 17:14-25 (Ex. B).  The "board" turned out to be a board of one: ACH's Corporate Medical Director, Defendant Travis Schamber (who has since left ACH).  Dr. Schamber testified that he reviewed 21-pages of documents that he received from an in-house attorney.  See Ex. D:  Travis Schamber, D.O., November 2, 2020, Deposition, pp: 18:18-19:4, 21:23-22:4.  Reading those documents alone, which did not include Mr. Hill's grievances about his inadequate medical care, Dr. Schamber concluded Mr. Hill was receiving "objectively reasonable care." *Id.,* pp: 60:22-61:19.  Dr. Schamber also testified that in 120 of the 120 similar medical "board" reviews he had conducted for ACH, he also concluded in every single one that ACH was providing appropriate medical care. *Id.,* pp: 83:2-16.  For each one, he followed the same process of reviewing the subset of documents that an in-house attorney for ACH had sent to him. *Id.*, pp: 19:5-20:20.

Defendant Joe Taylor, the Jail Administrator, Defendant Phelps County's expert witness, Dr. Joseph Muscato; and Plaintiff's expert witness, Dr. Nathaniel Evans, have all testified that this process reeked of fraud (or a synonymous term) since it seemed implausible that every ACH "board" review in a sample size that large would arrive at the same conclusion.  See Joseph Taylor,

2

April 30, 2021 Deposition, pp: 20:17-21:11; 22:4-23:4 (Ex. B); Dr. Joseph Muscato, April 29, 2021 Deposition, pp: 45:10-47:16 (Ex. E); and Dr. Nathaniel Evans, February 24, 2021 Deposition, pp: 131:8-132:2 (Ex. F)

**II.    Procedural Background From the Last Rule 37 Hearing About Email(s) Missing from the "Board" Review, and What Happened in the Court-Ordered Depositions.**

Plaintiff filed a Rule 37 motion seeking relief on several issues on January 15, 2021. That motion addressed, among other things, the destruction of email surrounding the "board" review. The parties argued that fully briefed motion on February 12, 2021. Relevant to the missing emails surrounding the "board" review, the Court ordered ACH to produce document retention policies, and expressed that it was premature to reach any conclusion about what relief, if any, may be appropriate for the destruction of those email(s). March 9, 2020 Email from Jennifer Nolawski to Joe Taylor. That email string is depicted below:



On that issue, Dr. Schamber's conclusion, sent to Defendant Taylor, that the "board" concluded that Mr. Hill received "objectively reasonable care" came via an internal email. But there were earlier email(s) in that same thread to Mr. Taylor that had been deleted and/or redacted. Specifically, Regional Nurse Manger Nolawski (the ACH point of contact for Defendant Phelps County Jail and Defendant Taylor) acknowledged that she had deleted portions of a prior internal ACH email string about Dr. Schamber's conclusion before forwarding it to Mr. Taylor (it is admitted that there was at least one missing email, but she did not know if there were others). See Ex. G: Jennifer Nolawski, December 15, 2020 Deposition, pp: 39:07-50:22. ACH has since insisted that the redacted internal email within that thread no longer existed and could not be recovered, even though the original email(s) were less than a year old.

III. **ACH's Position that Privilege Protected the "Board" Review, and the Testimony Related to ACH's Document Retention Policies that the Court Ordered.**

ACH successfully advocated that the attorney-client privilege attached to the exact same March 9, 2020 "board" review conclusions that Dr. Schamber reached through an *en camera* review before this Court. March 2, 2021 Order [DK 85]. That document pre-dates, or is contemporaneous with, the email(s) that were edited and/or deleted. So ACH cannot plausibly deny that litigation-preservation obligations attached to the related emails sent to Mr. Taylor (which include the deleted forward). Yet ACH still insists the earlier email(s) mysteriously disappeared and cannot be recovered. See Ex. H: January 25, 2021 Affidavit of Saif Mohammed.

The Court ordered production of document retention policies about the email(s). Setting aside the litigation-preservation obligation, even the most generous construction of ACH's document retention polices required the preservation of the subject email(s): routine email must be retained for 6 months and Mr. Hill filed suit four months later. See Ex. I: Dr. Angela Moriarity, April 9, 2021 Deposition, pp. 32:5-35:9. "Important email" must be retained permanently. *Id.,* pp. 32:9-10. Indeed, the ACH's document retention policy reads as follows:

| | | |
|---|---|---|
| Active contracts and leases | All | Permanently |
| Routine correspondence | All | 1 year |
| Important correspondence | All | Permanently |
| Routine email correspondence | All | 6 months |

Information and Records Management     2 of 5

Case: 4:20-cv-00804-JMB Doc. #: 82 Filed: 02/22/21 Page: 3 of 5 PageID #: 861

**Information and Records Management**

| | | |
|---|---|---|
| Important email correspondence | All | Permanently |
| Internal memos and reports (miscellaneous) | All | 3 years |

To that point, Dr. Angela Moriarity, ACH witness produced in response to the Court's Order, agreed the email should have been preserved under any interpretation of the policy, and she had no explanation why ACH failed to do so. Dr. Angela Moriarity, April 9, 2021 Deposition, pp: 32:17-35:9 (Ex. I). This is especially surprising since ACH is litigation savvy (and even markets itself as such). See Ex. J: Defendants Ex. C. Case List.

## I.    LEGAL STANDARD

"District courts have inherent authority to impose sanctions when a party destroys evidence that it knows or should know is relevant to potential litigation and thereby prejudices its potential adversary." *Taylor v. Null*, No. 4:17-CV-0231-SPM, 2019 WL 4673426, at *4 (E.D. Mo. Sept. 25, 2019) (emphasis added) (internal quotations omitted). Such sanctions include spoliation inferences, "which permit[] the jury to assume the destroyed evidence would have been unfavorable to the position of the offending party." *Id.* (first citing Fed. R. Civ. P. 37(b)(2); then citing *Moyers v. Ford Motor Co.*, 941 F. Supp. 883, 885 (E.D. Mo. 1996); and then citing *Ameriwood Indus., Inc. v. Liberman*, No. 4:06-CV-524-DJS, 2007 WL 5110313, at *4 (E.D. Mo. July 3, 2007)).

"For 'an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party.'" *Id.* at *4 (quoting *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016)). The Eighth Circuit has applied a reasonableness standard to determine whether a plaintiff's grievances and complaints placed defendants on notice about preserving video footage in correctional facilities. *Id.* at *6. Additionally, courts have broad discretion to impose sanctions under Fed. R. Civ. P. 37(b)(2). *Id.* at *4; *see also Strutton v. Meade*, 668 F.3d 549, 558–59 (8th

6

Cir. 2012) (underscoring district court's "considerable discretion" to levy sanctions but ultimately upholding district court's decision to deny sanctions request over spoliation issue).

Moreover, in a highly analogous case that involved missing documents related to a prison medical director's knowledge of an inmate's prior complaints, and the adequacy of his treatment in deliberate indifference claim, the Eighth Circuit has specifically held that an adverse inference is an appropriate way to address missing documents. *Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010). In that case, a prison medical director failed to produce letters the inmate seeking care had sent to the director. *Id,* at 461-62. In response, and to support its holding that summary judgment was properly denied, the Eighth Circuit reasoned:

> Moreover, under the so-called "adverse inference rule," Byus's failure to produce the letters he received from Langford and Hardin permitted the district court to infer that the evidence contained in those letters would undermine his defense. *See* 2 John Henry Wigmore, Evidence in Trials at Common Law § 285, at 192 (James H. Chadbourn rev.1979); 2 Kenneth S. Broun, *et al.,* McCormick on Evidence § 264, at 220–21 (6th ed.2006); *see also Int'l Union, UAW v. NLRB*, 459 F.2d 1329, 1336 (D.C.Cir.1972) ("Simply stated," the adverse inference rule "provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.").

*Id.*

## II.  ARGUMENT

### A. ACH Cannot Explain the Disappearance of Email(s) Related to the Sham "Medical Review".

ACH deleted email(s) related to the sham "medical review" that incorrectly informed Phelps County that Mr. Hill was receiving appropriate medical care. The "medical review" actually had nothing to do with medical care; it instead supports Mr. Hill's theory that the "medical review" is another means to paper ACH's file to protect itself from lawsuits, not help suffering patients like Mr. Hill. The law obligated ACH to preserve these critical email(s); and Eighth

7

Circuit law does not treat the loss of these email(s) under the circumstances of this case as accidental. *Id.* To be sure, Eighth Circuit cases considering adverse inference issues have provided that "'[i]ntent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.'" *Id.* at *4 (emphases added) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)).

The law focuses on whether there is an "'intentional destruction of evidence indicating a desire to suppress the truth,' and not simply that the parties were aware of the prospect of litigation." *Id.* (quoting *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007)). For instance, the Eighth Circuit has concluded that a defendant that had "destroyed a voice recording pursuant to its routine retention policy . . . create[d] a sufficiently strong inference of an intent to destroy it for the purpose of suppressing evidence" because the defendant "*had general knowledge that such recordings would be important to any litigation in which an accident resulted in death or injury.*" *Id.* (emphasis added) (citing *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 742–48 (8th Cir. 2019)).

ACH has sought to concurrently protect documents associated with Mr. Hill's "medical review" as protected by the attorney-client privilege, while now claiming ignorance as to how email correspondence related to that same process have mysteriously disappeared. That is not credible: ACH's litigation position serves as an admission that ACH knew it was obligated to preserve documents pertaining to Mr. Hill. ACH is a litigation savvy company that boasts about its litigation success and ability to insulate its clients from lawsuits. Therefore, it cannot plausibly contend the email(s) regarding the sham "medical review" somehow mysteriously just disappeared from the numerous individual computers and corporate servers just weeks or months after the that

8

Case No. 4:20-CV-00804-JMB

same email traffic occurred. This is particularly true where any reading of ACH's document retention policy required ACH to preserve the email, and where ACH had already claimed attorney-client privilege over certain documents pertaining to that review. And the destruction of the email is all the more troubling since no ACH witness has even attempted to explain how the email(s) somehow disappeared suddenly. ACH knew they had an obligation to preserve it but they chose not to do so; this more strongly establishes an inference of intent than the Eighth Circuit and district court cases cited in this motion.

### B. The Loss of the Email(s) Discussing Mr. Hill's Sham "Medical Review" Substantially Prejudices Plaintiff.

When evaluating requests for adverse inference instructions, "the 'prejudice' requirement 'is satisfied by the nature of the evidence destroyed in the case.'" *Taylor*, 2019 WL 4673426, at *4 (quoting *Stevenson*, 354 F.3d at 748). The *Taylor* court explained how the Eighth Circuit previously had addressed the second prong of the adverse inference instruction test:

> The [*Stevenson*] court upheld sanctions even though "there [was] no indication that the [destroyed audio recording] could be classified as a smoking-gun," because "it was the ***only recording of conversations between the engineer and dispatch contemporaneous with the accident***," and this ***unique nature of the evidence "rendered its loss prejudicial to the plaintiffs***."

*Id.* (emphases added) (quoting *Stevenson*, 354 F.3d at 746).

Here, Mr. Hill finally was diagnosed with terminal, stage IV lung adenocarcinoma in April 2020. ACH's sham "board review" added weeks, if not months, to Mr. Hill's deterioration and suffering, and diminished Mr. Hill's likelihood for successful treatment. The lost email traffic would have revealed who all was involved with the "board review," what they knew about its true purpose (and any behind-the-scenes commentary they had about Mr. Hill's condition and the inadequate treatment he was receiving). Mr. Hill also reasonably believes the email(s) would have shown ACH did not care about his medical care and instead sought to avoid sending his for outside

9

diagnostic testing to save costs and avoid the administrative burdens that doing so would entail for ACH and its client Phelps County.  This evidence would have strengthened Mr. Hill's liability and punitive damages evidence against ACH.  The loss of such evidence substantially prejudices Mr. Hill and requires an adverse-inference instruction.  Finally, the policy dictates undergirding Rule 37's deterrence component require a significant sanction like a mandatory adverse inference instruction; the failure to do so would serve to encourage litigants to "lose" critical documents like the conversation related to the sham "board review" that were harmful to its case.  The Court should not condone that practice.

### III. CONCLUSION

The Court should grant Mr. Hill's motion and read a mandatory adverse-inference instruction to remedy the harm caused by ACH's destruction of email(s) pertaining to the sham "board review".

Date:  May 20, 2021

                                          Respectfully Submitted

                                          */s/ Charles C. Eblen*
                                          Charles C. Eblen, #55166
                                          Brandon K. Gutshall, #61848MO
                                          SHOOK, HARDY & BACON L.L.P.
                                          2555 Grand Boulevard
                                          Kansas City, MO  64108-2613
                                          Telephone:  816-474-6550
                                          Facsimile:  816-421-5547
                                          ceblen@shb.com
                                          bgutshall@shb.com
                                          *Attorneys for Plaintiff*

Case No. 4:20-CV-00804-JMB

## **CERTIFICATE OF SERVICE**

I, Charles C. Eblen, an attorney, hereby certify that on May 20, 2021, I caused a true and correct copy of the foregoing **MOTION FOR ADVERSE INFERENCE INSTRUCTION** to be served via Electronic Mail upon the following counsel of record:

John Terry Brooks
Michael G. Berry
NEWMAN COMLEY PC
601 Monroe Street
P.O. Box 537
Jefferson City, MO  65102
Telephone:  573-634-2266
brooksj@ncrpc.com
michaelberry@ncrpc.com

**ATTORNEY FOR DEFENDANTS PHELPS COUNTY SHERIFF'S DEPARTMENT; PHELPS COUNTY JAIL; SHERIFF RICHARD L. LISENBE; KELLY RATCLIFF; SERGEANT GLENN; AND LIEUTENANT JOE TAYLOR**

J. Thaddeus Eckenrode
Lisa Howe
ECKENRODE MAUPIN
11477 Olde Cabin Rd.
Suite 110
St. Louis, MO 63141
314-726-6670
Fax: 314-726-2106
jte@eckenrode-law.com
lhh@eckenrode-law.com

**ATTORNEY FOR DEFENDANTS DR. ARTHUR BENTLEY, DIONNE KELLEY, AND ADVANCED CORRECTIONAL HEALTHCARE, INC.**