UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADY MAAKIA CHARLENE SMITH, personal representative of the Estate of BILAL HASANIE HILL, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| PHELPS COUNTY SHERIFF'S DEPARTMENT, et al., | ) ) ) ) |
| Defendants. | ) |

No. 4:20 CV 804 JMB

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's renewed motion for an adverse-inference instruction against defendant Advanced Correctional Healthcare, Inc., (ACH) as a sanction for its failure to preserve evidence. Defendant filed a response in opposition[1] and the parties appeared for oral argument on July 27, 2021. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Bilal Hill was housed at the Phelps County Jail as a federal pretrial detainee from October 2019 until April 2020, when he was diagnosed with stage IV lung cancer. On June 19, 2020, he filed this 42 U.S.C. § 1983 action in which he asserted claims for deliberate indifference and unconstitutional policies or customs. After Mr. Hill's death on January 14, 2021, his personal representative Lady Maakia Charlene Smith was substituted as plaintiff.[2] She filed an amended

---

[1] Defendant characterizes plaintiff's motion as an effort to harass and includes a "cross-motion for sanctions" against plaintiff in its opposition. The Court declines to address a motion embedded in an opposition memorandum.

[2] The Court refers to both Mr. Hill and Ms. Smith as "plaintiff" without regard to when Ms. Smith was formally substituted.

complaint in which she re-asserts Mr. Hill's § 1983 claims and adds a claim for medical negligence.[3]

## I. Background

Mr. Hill submitted multiple requests for medical care between January 2020 and early March 2020. In February 2020, jail administrator defendant Joe Taylor observed that Mr. Hill's condition was deteriorating and asked ACH Regional Nurse Manager Jennifer Nolawski for a second opinion regarding Mr. Hill's care. Joseph Taylor Dep.[4] at 16-17 [Doc. # 121-2]. Ms. Nolawski offered to have Mr. Hill's medical files reviewed by a "review board." Id. That review was completed by defendant Travis Schamber, D.O. Travis Schamber Dep. at 18-19 [Doc. # 121-4]. On March 9, 2020, Ms. Nolawski emailed the results of Dr. Schamber's review to defendant Taylor. Email String [Doc. # 62-4]. According to the email, Dr. Schamber concluded from the record that Mr. Hill was "receiving objectively reasonable care based on the complaints given. One recommendation is to consider an activity log to see if [his] subjective complaints match activity level as it is documented that [he] has a rather normal physical exam." Id.

Defendant ACH produced the email correspondence related to Dr. Schamber's review, with the exception of privileged communications. See Joint email [Doc. # 62-2]. On December 29, 2020, defendant Phelps County produced defendant Taylor's copy of Ms. Nolawski's email, which shows a portion of a previously undisclosed communication to her. [Doc. # 62-4] ("Good Morning, Jen, Below you . . . see Dr. Schamber's review . . . that Joe Taylor requested."). Ms. Nolawski testified at deposition that the email she forwarded to Taylor was sent to her by ACH's

---

[3] A claim for negligent infliction of emotional distress was dismissed on defendants' unopposed motion. [Doc. # 172].
[4] Mr. Taylor was deposed twice: once in his capacity as a defendant [Doc. # 121-2] and once as the 30(b)(6) witness for Phelps County [Doc. # 121-3].

in-house counsel, Saif Mohammed.  She also testified that she had deleted information from Mr. Mohammed's email before she forwarded Dr. Schamber's recommendation to Taylor.  Jen Nolawski Dep. Excerpt at 2-3 [Doc. # 62-5] (testifying that she deleted "a lot of stuff underneath and around our names and [the] confidentiality notice" to "make it as simple as possible" to read the intended content).  ACH acknowledges that it improperly failed to retain Mr. Mohammed's email to Ms. Nolawski.  Feb. 12, 2021 Hearing Tr. at 25-26 [Doc. # 177].

    **II.**        **Procedural Background Regarding Discovery Dispute**

Plaintiff served his first request for production of documents on September 18, 2020. [Doc. # 62-1].  In relevant part, plaintiff sought all documents related to his medical care, training materials ACH prepared for Phelps County, and ACH's marketing materials.  On November 23, 2020, the parties notified the Court that they had significant disagreements regarding plaintiff's requested discovery.  See Joint email.  During a telephone conference on November 30, 2020, ACH represented it had produced all nonprivileged documents related to plaintiff's medical care.

On December 29, 2020, Phelps County served supplemental initial disclosures, including more than 900 pages of training materials it had received from ACH and that ACH had not produced to plaintiff.  On January 15, 2021, plaintiff filed a motion for sanctions pursuant to Rule 37, Fed.R.Civ.P.  [Doc. # 62].  Plaintiff requested an adverse-inference jury instruction, arguing that he was significantly prejudiced by ACH's failure to timely produce the training materials because he had been denied the opportunity to ask questions about these materials during the depositions of five witnesses and defendants.  In response to the sanctions motion, on January 25, 2021, Mr. Mohammed signed an affidavit in which he stated that ACH's IT department had conducted an exhaustive search for documents related to this case.  [Doc. # 64-10].  He stated that "ACH either has produced [the documents] already, [is] producing any additional responsive

3

documents this week, or those documents are not responsive to discovery requests." On February 9, 2021, however, ACH produced a heavily redacted document entitled "REQUEST FOR CASE REVIEW," dated March 6, 2020. [Doc. # 74-2]. The document, which states it was prepared in anticipation of litigation, was written by Mr. Mohammed and directed to Dr. Schamber to inform him "that someone has requested a case review" of Mr. Hill. All other content of the document was redacted. In response to the late production of this document, plaintiff argued that the Court should enter default on liability and find that ACH had waived any privilege over the document. [Doc. # 76].

The parties appeared for a hearing on February 12, 2021. Following the hearing, the Court granted in part and denied in part plaintiff's motion for sanctions. [Doc. # 80]. Specifically, the Court determined that plaintiff was entitled to redepose parties and witnesses to address the late-obtained training documents, with ACH to bear attorney's fees and costs. The Court also gave plaintiff the option of taking depositions of ACH's IT department employees to determine what processes they used to search for records. In addition, the Court directed ACH to file an affidavit detailing its document retention policies and to submit an unredacted copy of Saif Mohammed's March 6, 2020, email for *in camera* review. After review, the Court concluded that the redacted portions contained privileged communications and directed ACH to update its privilege log. [Doc. # 85].

On February 22, 2021, defendant ACH filed its document retention policies as exhibits to the affidavit of Dr. Angela Moriarity, its vice president of human resources. [Docs. # 81-1, # 82].

On March 1, 2021, plaintiff notified the Court that she planned to take the depositions of six people, including Dr. Moriarity.[5]  [Doc. # 84].

On May 20, 2021, plaintiff filed the instant renewed motion for an adverse-inference instruction, arguing that both ACH's document retention policies and Dr. Moriarity's testimony established that ACH should have retained all emails related to Dr. Schamber's review of Mr. Hill's medical care.  The parties appeared for a hearing on July 27, 2021.

### III.     Discussion

Plaintiff's claim that ACH failed to preserve emails related to the medical review implicates Rule 37(e), Fed.R.Civ.P., which provides:

> (e) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  In addition, a court's inherent power includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process."  Cody v. City of

---

[5] Dr. Moriarity testified that she had no involvement in attempting to track down the missing email from Mr. Mohammed; did not know what steps ACH took to locate the email; and was unable to address what steps were taken to recover the email "from an IT or technical perspective."  Indeed, she testified, "[t]hat's not something I'm involved in."  Furthermore, she did not know what a litigation hold was.  Angela Moriarity Dep. at 20-25 [Doc. # 173-2].

St. Louis, No. 4:17-CV-2707 AGF, 2021 WL 2454215, at *8 (E.D. Mo. June 16, 2021) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 750 (8th Cir. 2004)). The remedy requested here — an adverse-inference instruction — is only justified where there is "a finding of intentional destruction indicating a desire to suppress the truth." Morris v. Union Pac. R.R., 373 F.3d 896, 901 (8th Cir. 2004) (quoting Stevenson, 354 F.3d at 746); Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007) ("The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth."). In addition to finding that ACH acted with intent, the Court must make a finding that plaintiff was prejudiced before imposing a sanction for destruction of evidence. Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993); Stevenson, 354 F.3d at 748.

Before examining whether plaintiff can establish the intent and prejudice required for an adverse-inference instruction, the Court finds it necessary to distinguish between what is known and what plaintiff infers from what is known. It is known that ACH attorney Saif Mohammed forwarded the results of Dr. Schamber's review of plaintiff's medical records to Jen Nolawski. She then forwarded the email to Joe Taylor at Phelps County Jail after deleting what she described as "a lot of stuff underneath and around our names and [the] confidentiality notice." ACH did not produce Mr. Mohammed's email or include it in a privilege log and now acknowledges that the email was deleted in violation of its document-retention protocols. From these known facts, plaintiff states the Court should infer that ACH destroyed other emails. Plaintiff argues that the missing emails would have revealed who else was involved in the review of Mr. Hill's care and, further, would have disclosed that ACH did not care about his medical care and refused to seek appropriate care outside the jail in order to avoid the costs and administrative burdens such care

would entail.  Pl. Renewed Motion at 9-10 [Doc. # 121].  The Court finds it inappropriate to rely on such a string of inferences and thus the decision regarding the propriety of an adverse-inference instruction will be based on ACH's failure to preserve Saif Mohhamed's email.

The Court acknowledges that "[i]ntent rarely is proved by direct evidence," and that courts often look to "circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors."  Morris, 373 F.3d at 901 (noting that courts have "substantial leeway to determine intent through consideration" of multiple factors).  While "[t]here need not be a 'smoking gun'" to prove intent, there must be evidence of "a serious and specific sort of culpability" regarding the loss of the relevant electronic information.  Auer v. City of Minot, 896 F.3d 854, 858 (8th Cir. 2018) (citing Rule 37(e)).  Plaintiff argues that intent should be inferred from ACH's failure to follow its own document retention policy and that, as an experienced litigant, ACH knew that litigation was likely in this case.  But, at most, that proves negligence in ACH's handling of electronic information, "not the sort of intentional, bad-faith misconduct required to grant an adverse presumption."  Id. (citing Stepnes v. Ritschel, 663 F.3d 952, 965 (8th Cir. 2011) (noting that "[s]evere spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith")).  Citing to Dr. Moriarity's deposition, plaintiff also argues that "[i]t appears that ACH never issued a litigation hold."  Pl. Reply Memo at 4 [Doc. # 140].  The Court offered plaintiff the opportunity to depose ACH's IT staff regarding the missing email.  Instead, plaintiff deposed Dr. Moriarity, who is ACH's vice president of human relations and, by her own testimony, has no knowledge of the entire concept of litigation holds, let alone whether one was imposed in this instance.  Thus, plaintiff cannot rely on Dr. Moriarity's testimony to establish that ACH failed in its obligations to preserve evidence.  See Gallagher, 619 F.3d at 844 (finding no prejudice arose from defendant's failure to produce evaluations where plaintiffs

failed to subpoena the evaluators).  The Court finds that plaintiff has failed to establish that ACH acted with the necessary intent to suppress the truth.

Plaintiff also cannot establish prejudice from the loss of Mr. Mohammed's email.  Plaintiff's primary argument relies on the fact that the "board review" Ms. Nolawski offered to Mr. Taylor was actually completed by one person — Dr. Schamber.  Plaintiff argues that because the offer of a "board" was a "sham," the review itself was necessarily a sham.  Plaintiff cites Taylor v. Null, No. 4:17-CV-0231-SPM, 2019 WL 4673426, at *4 (E.D. Mo. Sept. 25, 2019), to support his assertion that he was prejudiced by the loss of Mr. Mohammed's email.  In Taylor, the Court granted plaintiff's motion for an adverse-inference instruction where prison officials failed to preserve video recordings of the disputed interaction between the inmate plaintiff and the defendant correctional officers.  The Court found that the missing video evidence "likely would have been dispositive" of the plaintiff's excessive force claims.  Id.  Here, the missing evidence is an email forwarding Dr. Schamber's findings about plaintiff's medical care, which themselves have been preserved and produced.  It is mere speculation that the forwarding email from in-house counsel would have contained material evidence regarding the adequacy of plaintiff's care.

In conclusion, the Court finds that plaintiff is not entitled to an adverse-inference jury instruction.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's renewed motion for sanctions against defendant Advanced Correctional Healthcare [Doc. # 121] is **denied**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of August, 2021.