UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADY MAAKIA CHARLENE SMITH, personal representative of the Estate of BILAL HASANIE HILL, deceased, <br><br> Plaintiff, <br><br> vs. <br><br> PHELPS COUNTY SHERIFF'S DEPARTMENT, et al., <br><br> Defendants. | No. 4:20 CV 804 JMB |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion for attorney's fees.[1] Defendant Advanced Correctional Healthcare, Inc., (ACH) filed a response in opposition and the parties appeared for oral argument on July 27, 2021. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.    Background**

On February 12, 2021, the Court authorized plaintiff to retake, at ACH's expense, depositions of parties and witnesses as a sanction for ACH's failure to produce documents. The Court also gave plaintiff the option of deposing an ACH employee with knowledge of the search ACH conducted of its electronically stored information. After giving notice to defendant, plaintiff redeposed three prior witnesses. Plaintiff also deposed, for the first time, Dr. Angela Moriarity, ACH's vice president of human relations. Plaintiff now seeks fees for 40.6 hours of attorney time

---

[1] At the Court's request, plaintiff supplemented the motion to remove duplicated time entries and list hourly rates. [Doc. # 173].

in the amount of $31,770.20, and deposition costs in the amount of $2,187.50. Defendant ACH objects that Dr. Moriarity's deposition exceeded the scope of the Court's sanction order, that plaintiff seeks fees for duplicative or unnecessary work, and that plaintiff's requested hourly rates are "exorbitant."

## II.   Discussion

"To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates." Bryant v. Jeffrey Sand Co., 919 F.3d 520, 529 (8th Cir. 2019) (citing Brewington v. Keener, 902 F.3d 796, 805 (8th Cir. 2018)). Courts may consider a number of factors in determining a reasonable attorney's fee, including the time and labor required to litigate the case, the novelty and difficulty of the questions involved, the skill required to perform the services properly, customary fees, the results obtained, and awards in similar cases. See Allen v. Tobacco Superstore, Inc., 475 F.3d 931, 944 n.4 (8th Cir. 2007); Bryant, 919 F.3d at 529 (quoting Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005)).

### A.   Dr. Moriarity's Deposition

As part of its sanction order, the Court gave plaintiff the option of taking depositions of ACH's IT department employees to determine what processes they used to search for records responsive to plaintiff's discovery requests.[2] The Court also directed ACH to file an affidavit detailing its document retention policies. On February 22, 2021, defendant ACH filed its document retention policies as attachments to the affidavit of Dr. Angela Moriarity, its vice president of human resources. [Docs. # 81-1, # 82]. On March 1, 2021, plaintiff notified the Court that she planned to take the depositions of six people, including Dr. Moriarity. [Doc. # 84].

---

[2] As is discussed in the Court's ruling on plaintiff's renewed motion for an adverse-inference instruction, ACH did not produce all responsive emails.

ACH argues that the relief the Court crafted was limited to taking second depositions on documents that were not made available when the witnesses were first deposed, but plaintiff seeks fees for conducting the first deposition of Dr. Moriarity. Plaintiff counters that the deposition was authorized under that portion of the Court's order giving plaintiff the option of deposing ACH's IT employees. Of course, Dr. Moriarity is not one of ACH's IT employees and, as she testified at her deposition, she had no first-hand knowledge of ACH's document retention policies or what steps had been taken to preserve or search for electronically stored information. Angela Moriarity Dep. at 20-25 [Doc. # 173-2]. Thus, ACH's objection is not unreasonable. On the other hand, plaintiff clearly identified Dr. Moriarity as someone she wished to depose pursuant to the Court's order authorizing further depositions. ACH did not raise its objection at that time and thus its objection is overruled as untimely.

### B. Hours Expended

Plaintiff seeks fees for 40.6 hours expended by two attorneys to prepare for and take four depositions that appear to have lasted around eight hours in total. Defendant ACH argues that the Court should disallow hours spent on reviewing and evaluating documents. ACH reasons that, if the documents had been timely produced, plaintiff would have reviewed and evaluated them before the initial depositions were taken. ACH additionally argues that, in the event that the Court concludes that it is appropriate to allow fees related to review of the documents, the billing statement discloses excessive and duplicative billing.

The Court agrees with ACH that some of the hours spent reviewing and preparing the newly disclosed documents are beyond the scope of the Court's sanction order because they would have been spent in advance of the initial depositions. The Court also agrees with plaintiff, however, that it was appropriate to review the prior depositions in light of the newly obtained

3

documents and to prepare a strategy for the second depositions. Accordingly, the Court will eliminate from the hours billed for deposing Dr. Bentley and Nurse Kelley a total of 5.7 hours spent on March 25 and March 26 for "evaluat[ing] past trainings" and "videos." An entry on March 29 for 5.5 hours to "review 11th supplemental production and watching several training videos" in preparation for the second deposition of Dr. Schamber is also beyond the scope of the sanction order and will be disallowed. Finally, the Court will reduce by 0.1 hours the entry on March 3 for 0.3 hours spent "coordinat[ing] actions for deposing Dr. Schamber, jail employees, and having a discovery hearing with the court;" preparation for an unrelated discovery hearing is beyond the allowable scope.

ACH's complaint of duplicative billing is easily addressed: As ACH notes, the same entries appear for each of the three redepositions. For example, three entries dated March 15, 2021, state "Coordinate strategy for taking the second deposition of Nurse Kelley, Dr. Bentley, Dr. Schamber and Jennifer No[law]ski." Amended Billing Statement [Doc. # 173-1]. Plaintiff's counsel explains that the total hours spent on this task were divided among the three redepositions and thus these entries do not reflect double billing. The Court accepts this explanation.

ACH complains that plaintiff bills for two attorneys to attend the depositions of Dr. Schamber and Dr. Moriarity. Plaintiff argues that it was appropriate to have a second attorney present for these two "important depositions." The Court finds that the presence of a second attorney, while useful, was not necessary to make plaintiff whole for ACH's failure to produce the documents. Thus, the Court will disallow 1 hour for Mr. Gutshall's appearance at Dr. Schamber's second deposition and 1.3 hours for his appearance at Dr. Moriarity's deposition.

### C.     Hourly Rates

Plaintiff seeks $940 per hour for the services of attorney Charles Eblen and $625 per hour for the services of attorney Brandon Gutshall. According to Mr. Eblen's affidavit,[3] these are counsels' standard hourly rates for 2021 as set by their law firm, Shook, Hardy & Bacon. Eblen Affidavit [Doc. # 144-2]. Mr. Eblen is a partner who obtained his law degree in 2003, and whose areas of practice include antitrust and trade regulation, appellate work, product liability, mass tort, privacy and date security, white collar defense and government investigations, and litigation. He does not list civil rights practice among his areas of expertise. Mr. Gutshall obtained his law degree in 2009. His areas of practice include product liability, automotive litigation, and mass tort. Like Mr. Eblen, he does not list civil rights practice among his areas of expertise.

Plaintiff argues that the "best evidence of the value of a lawyer's services is what the client agreed to pay him." Pl. Reply at 4 (citing Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 438 (7th Cir. 2004)). Of course, this case from the Seventh Circuit is not binding precedent in this matter. Moreover, the quoted statement was made to support the court's rejection of the argument that fees should be awarded in excess of the flat fee counsel had negotiated with his client. Plaintiff also cites another Seventh Circuit case, Balcor Real Est. Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996), in which the court stated, "the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value." In Balcor, the defendant argued that it should not have to pay the plaintiff's actual attorney's fees. The Seventh Circuit rejected the argument, noting that the parties' contract obligated the defendant to make plaintiff whole. Defendant did

---

[3] Unlike the typical practice of attorneys appearing before this Court, counsel did not supply their supporting documentation with their initial motion, submitting it only in rebuttal to defendants' opposition.

5

not "deny that these were real bills" that plaintiff's in-house counsel deemed "commercially reasonable and paid." There is no evidence in this case of a fee agreement that supports the hourly rates counsel seek here, and thus Balcor is inapplicable.

In the Eighth Circuit, a reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Little Rock Sch. Dist. v. Arkansas, 674 F.3d 990, 995 (8th Cir. 2012); see also Trickey v. Kaman Indus. Techs. Corp., No. 1:09CV26 SNLJ, 2011 WL 5900990, at *1 (E.D. Mo. Nov. 23, 2011) (noting that the "the Court is compelled to adjust counsel's fees to reflect those more in keeping with the prevailing rates" where case was tried). When determining reasonable hourly market rates, district courts may rely on their own experience and knowledge of prevailing rates in the community. See Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). "[The court does] not automatically accept the lawyer's rate as reasonable; we look also to the ordinary fee for similar work in the community."[4] Koenig v. Bourdeau Const. LLC, No. 4:13CV00477 SNLJ, 2014 WL 6686642, at *1 (E.D. Mo. Nov. 26, 2014) (quoting Shakopee v. Mdewakanton Sioux Community v. City of Prior Lake, Minn., 771 F.2d 1153, 1160 (8th Cir. 1985)).

Counsel argue that their requested rates are reasonable and consistent with what similar attorneys charge. Pl. Reply at 3-4 [Doc. # 144]. In support, they cite a recent decision in Fernandez v. St. Louis County, 4:19cv1638, 2021 WL 1889914, at *11-12 (E.D. Mo. May 11, 2021). In this

---

[4] It is fairly typical in this district for counsel seeking fees to support their request with affidavits from other attorneys in their field attesting that the rates are consistent with the prevailing rates for similar work. See, e.g., Fernandez v. St. Louis County, 4:19cv1638 SNLJ, Memorandum and Order at 23 [Doc. # 55] (noting that counsel submitted four affidavits from local attorneys attesting to reasonableness of requested hourly rates); Chestnut v. Wallace, No. 4:16-CV-1721 PLC, 2020 WL 5801041, at *2 (E.D. Mo. Sept. 29, 2020) (hourly rate supported by affidavits from two attorneys); Trickey v. Kaman Indus. Techs. Corp., No. 1:09CV26 SNLJ, 2011 WL 5900990, at *1 (E.D. Mo. Nov. 23, 2011) (noting that counsel submitted affidavits from other attorneys in their filed in support of requested hourly rate). Counsel have not provided such affidavits here.

6

§ 1983 case, Judge Limbaugh approved, without opposition, hourly rates of $575 for one attorney and $475 for a second attorney. Undaunted by the fact that these rates are significantly lower than those requested here, counsel argue that the facts and circumstances of the present case justify a much higher hourly rate. In particular, counsel state, Fernandez was a bench-tried case on largely uncontested, stipulated facts. Here, by contrast, ACH has created "significant roadblocks" to obtaining discovery.[5] Without expressing an opinion on counsel's characterization of ACH's conduct, the Court notes merely that such "roadblocks" are reflected in the hours that the parties and Court have expended on discovery disputes in this case. The Court does not accept the contention that this justifies a higher hourly rate.

Other recent § 1983 cases suggest that the hourly rates sought here are far in excess of the local prevailing rates. Thus, in Willson v. City of Bel-Nor, Missouri, No. 4:18-CV-003 RLW, 2021 WL 2255003, at *6 (E.D. Mo. June 3, 2021), the Court approved hourly rates between $250 and $410. And, in Robinson v. City of St. Louis, Mo., No. 4:17-CV-156 PLC, 2020 WL 4673823, at *3 (E.D. Mo. Aug. 12, 2020), the Court rejected a request for an hourly rate of $500 as "considerably higher than the median rate for law partners in St. Louis," finding instead that hourly rates of $350 and $400 were more appropriate.

Both parties cite the 2019 Missouri Law Weekly survey of billing rates to support their positions. In 2019, the median hourly rate was $390 for partners in the St. Louis area and $475 for partners in Kansas City. Noting that the surveyed rates were for work completed in prior years, plaintiff argues that the Court should apply a percentage increase between 5% and 15.7% to the

---

[5] Counsel also suggest that the stakes in this case are particularly high. See Pl. Reply at 5 (this case "seek[s] to expose a longstanding unconstitutional business practice."). Without in any way diminishing the importance of plaintiff's claims here, the Court notes that Fernandez involved a challenge to the constitutionality of St. Louis County's solicitation and vagrancy ordinances, on behalf of a homeless man who had been cited dozens of times for begging.

median rates paid to partners in Kansas City. As counsels' calculations show, however, the resulting rates still do not reach the $940 that Mr. Eblen requests. And, of course, the relevant market is Saint Louis, which has a significantly lower median rate.

Plaintiff has not met her burden of showing that the requested hourly rates are reasonable. Based on its review of recent cases, the 2019 Missouri Law Weekly survey, and its experience and knowledge of prevailing rates in the community, the Court finds that a reasonable hourly rate in this matter is $450 for both attorneys. The Court acknowledges that the differences in their experience would justify different rates for the two attorneys, but given the steep discount being applied, the Court finds that $450 is appropriate for both.

In summary, the Court will allow 6.8 hours for the deposition of Dr. Bentley, 8.8 hours for the deposition of Nurse Kelley, 4.2 hours for the deposition of Dr. Schamber, and 7.2 hours for the deposition of Dr. Moriarity, for a total of 27 hours at the hourly rate of $450, for a total award of $12,150.00 for attorneys fees. The Court will also allow costs for the court reporters and transcripts in the amount of $592.00 for Dr. Bentley, $574.50 for Nurse Kelley, $518.50 for Dr. Schamber, and $502.50 for Dr. Moriarity, for a total of $2,187.50.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for attorney's fees and costs [Doc. # 120] is **granted in part and denied in part**. Plaintiff's counsel are awarded a total of $12,150.00 in fees and $2,187.50 for deposition costs.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of August, 2021.