**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

LADY MAAKIA SMITH,                    )
                                      )
      Plaintiff,               )
                                      )       Cause No.: 4:20-CV-00804-JMB
v.                                    )
                                      )       JURY TRIAL DEMANDED
ADVANCED CORRECTIONAL                 )
HEALTHCARE, et al.                    )
                                      )
      Defendants.              )

## DEFENDANTS ADVANCED CORRECTIONAL HEALTHCARE, INC., DR. ARTHUR BENTLEY, AND DIONNE KELLEY'S PRE-TRIAL BRIEF

COME NOW Defendants, Advanced Correctional Healthcare, Inc., Dr. Arthur Bentley, and Dionne Kelley, by and through undersigned counsel, and pursuant to this Court's Order setting Trial (Doc. 193) hereby file their pre-trial brief.

## FACTS

Defendant Kelley is a Licensed Practical Nurse who worked for ACH at the Phelps County Jail (PCJ) during the relevant times.  Defendant Dr. Bentley is a physician who worked for ACH at the PCJ, which he contractually visited one morning each week, during the relevant times.  ACH contracts to provide medical care to inmates at the PCJ.

Plaintiff Lady Smith is the surviving sister of decedent Bilal Hill, who was incarcerated in the Phelps County Jail with regard to the issues in this lawsuit. Mr. Hill died of lung cancer in January, 2021. He originally filed this federal case against ACH, Kelley, Bentley, Phelps County

(and various jail personnel) in 2020, prior to his death, which was later amended to include additional parties and in four counts:

> Count 1 – Deliberate Indifference to Serious Medical Needs
>
> Count 2 – Monell claims (Unconstitutional Policies, etc.)
>
> Count 3 – Medical Malpractice (state tort law claim)
>
> Count 4 – Negligent Infliction of Emotional Distress (state tort law claim)

Count 4 was voluntarily dismissed by plaintiff. Plaintiff's claims against the Phelps County defendants have been dismissed, as has the Monell claim against ACH (Doc. 201). The only remaining claims are deliberate indifference claims (Count 1) against Kelley and Bentley, and medical malpractice claims against them (Count 3) and for which ACH is alleged to be vicariously liable. No separate claims against ACH remain pending.

While awaiting trial on a weapons charge in the United States District Court for the Western District of Missouri, Central Division, Mr. Hill was initially housed at the Cole County Jail in Jefferson City, Missouri. On October 4, 2019, Mr. Hill was transferred to the PCJ. Mr. Hill was eventually released from the PCJ on approximately April 1, 2020, when he was admitted to Phelps County Hospital.  The allegations in this case involve medical care that spans just over two and half months, i.e., from January 13, 2020, until April 1, 2020.

On January 13, 2020, Mr. Hill placed his first sick call request regarding back pain, and an officer called Dr. Bentley. Dr. Bentley prescribed Tylenol twice daily for three days and instructed Mr. Hill to see the nurse the next day. However, Mr. Hill saw both Nurse Kelley and Dr. Bentley the next day (January 14, 2020) for his complaints of pain in his neck and back. Dr. Bentley diagnosed Mr. Hill with a muscle strain, prescribed a Prednisone taper, and instructed him to decrease his workouts. At some point between January 22 and January 25, 2020, Mr. Hill submitted a sick call request because he was starting to have spasms in his shoulder. He

requested that x-rays be performed for further evaluation. Mr. Hill's request was reviewed by Dr. Bentley, but Mr. Hill declined to see Dr. Bentley. Dr. Bentley did not order any x-rays, since x-rays are not helpful at evaluating soft tissue issues such as muscular tears and strains.

On January 25, 2020, Mr. Hill complained of chest pain to Corrections Officer Dowdy. Dr. Bentley was phoned, and he determined that, based on the symptoms, the pain did not appear to be cardiac related. He prescribed Tylenol again for Mr. Hill and requested that Mr. Hill's vital signs be checked again in two hours. Mr. Hill was also instructed to see Nurse Kelley, the next day, and he did so, for a follow-up visit on January 27, 2020. Mr. Hill denied any chest pain at his follow-up visit, but he did mention that his back and shoulder were bothering him.

On January 30, 2020, Mr. Hill told corrections officer Dowdy that he was very upset and did not believe that he was getting proper treatment for his back pain. However, a couple of hours after making this complaint, Mr. Hill was observed to be competing in a high jump contest in his pod. Corrections Officer Dowdy relayed this information to Nurse Kelley, who noted that Mr. Hill had been seen for back pain and that Dr. Bentley had prescribed him a Prednisone taper and provided him with information regarding his injury, and that Mr. Hill was informed that it may take weeks for his pulled muscles to stop aching.

Mr. Hill saw Nurse Kelley again on February 6, 2020 for pain in his shoulder and back. Dr. Bentley was made aware of Mr. Hill's symptoms, and Mr. Hill was informed that he should continue to decrease his physical activities. On February 12, 2020, Mr. Hill was seen by Nurse Kelley and Dr. Bentley for complaints of back pain. Dr. Bentley continued to believe that his complaints were of a musculoskeletal nature, and that it would take up to six weeks for those to resolve with the steroid that had been prescribed. He was not, therefore, expecting any improvement in Mr. Hill's condition until early March. Mr. Hill was informed that he could

purchase Tylenol as needed at commissary. On February 20, 2020, Mr. Hill put in a sick call request for complaints of a "growth" in his neck. He was seen by Nurse Kelley the following day, February 21, 2020, and Mr. Hill's vital signs were within normal limits and his lung sounds were normal.  His bowel sounds were normal, and he had no decreased range of motion and he was ambulating without difficulty.  Nurse Kelley called Dr. Bentley, who continued to believe the issues were of a musculoskeletal nature, and that Mr. Hill had a left trapezius pull, but he ordered that Mr. Hill be scheduled to see Dr. Bentley when Dr. Bentley was at the facility next. He ordered Plaintiff to decrease exercise since Mr. Hill had not been following doctor's orders regarding exercise.

A few days later, on February 26, 2020, Mr. Hill saw Dr. Bentley for his complaints of a "growth" in his neck. Dr. Bentley noted a peanut-sized lymph node on the left side of Mr. Hill's neck and ordered a CBC and chemical profile (blood work) to evaluate for a possible infection as the cause of the enlarged lymph node. He was scheduled for a blood draw for these labs on March 4, 2020. When Mr. Hill arrived for that visit, Nurse Kelley could not draw blood because Mr. Hill was not able to keep his arm still. The same thing occurred on March 5, 2020. On March 6, 2020, Nurse Kelley was finally able to draw blood, which she sent out for analysis. The results, which came back a day later, were essentially within normal limits.  A couple of mildly elevated levels were non-specific and had nothing to do with Mr. Hill's eventual cancer diagnosis.

On March 17, 2020, Mr. Hill was placed on medical watch.  Mr. Hill was seen by Dr. Bentley on March 18, 2020 for follow-up on complaints of a swollen neck.  Mr. Hill's lungs were clear, and his heart sounded normal.  His abdomen was soft, and his liver and spleen were within normal limits.  Dr. Bentley conducted a physical examination which was grossly normal,

except for the left bicep tear that Mr. Hill had.  He discussed the lab results that had come in with Mr. Hill, and told him that there was no infection present. Dr. Bentley believed Mr. Hill appeared essentially normal, but having noted his weight loss, ordered that Mr. Hill be kept on medical observation.

On March 27, 2020, Mr. Hill was seen by Nurse Kelley for complaints of chest pain that felt like heartburn.   Nurse Kelley examined Mr. Hill and called Dr. Bentley, who prescribed Tylenol and said he should see Nurse Kelley the following day for follow-up. Mr. Hill was seen for a follow-up visit on March 28, 2020, and he reported no chest pain at that time. He continued to complain of shoulder/back pain with minimal relief with Tylenol.  Therefore, Nurse Kelley scheduled for Mr. Hill to see Dr. Bentley when Dr. Bentley was at the facility next, which was 3 days thereafter.

Mr. Hill saw Dr. Bentley on April 1, 2020 for his continued complaints of severe pain in his upper back and left arm, as well as numbness in his left arm.  Mr. Hill continued to believe he needed surgery to repair "several torn tendons."  Mr. Hill previously had similar issues, which were from torn tendons, prior to entering the Phelps County Jail.  Dr. Bentley examined Mr. Hill and his heart rate and blood pressure were elevated, and he had lost weight.  His lungs appeared normal, and his heart did not have a murmur, but his heart rate was rapid.  Since Dr. Bentley could not figure out why Mr. Hill was having this pain, he referred Mr. Hill to the emergency room for evaluation.

On April 2, 2020, Mr. Hill was taken to Phelps County Regional Hospital where he was seen by Dr. Brock. Dr. Brock ordered an x-ray, which was normal.  Dr. Brock was going to discharge Mr. Hill, but Mr. Hill insisted that an MRI be taken.  The MRI was performed, and Mr.

Hill was discovered to have cancer.  Mr. Hill was then transferred to Cox Health for the initiation

of treatment, at which time the government released him from "custody" to seek treatment.

## LAW

Acts are done under color of law when a person acts or purports to act in the performance

of official duties under any state, county or municipal law, ordinance, or regulation. 42 U.S.C.

Section 1983; *Monroe v. Pape*, 365 U.S. 167 (1961), overruled in part, *Monell v. Department of

Social Services*, 436 U.S. 658 (1978); *Screws v. United States*, 325 U.S. 91 (1945); *United States

v. Classic*, 313 U.S. 299, reh'g denied, 314 U.S. 707 (1941).

A serious medical need is one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention.  *Johnson v. Busby*, 953 F.2d 349 (8th Cir. 1991).

"To commit an intentional tort, a person must intend the act and the resulting harm."

*Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. App. E.D. 2001) (citing *State ex inf. Ashcroft v.

Kansas City Firefighters Local No. 42*, 672, S.W.2d 99, 112 (Mo. App. 1984)).  A prisoner's

Eighth Amendment rights are violated if prison officials exhibit deliberate indifference to the

prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*,

511 U.S. 825 (1994). It is a violation of the Eighth Amendment to deny medical care for a

serious medical need that results in pain and suffering.  *Estelle*, 492 U.S. at 103.  However, "not

every governmental action affecting the interests or well-being of a prisoner is subject to Eighth

Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Misdiagnosis fails to violate

the Eighth Amendment. *Estelle*, 429 U.S. at 106. Medical malpractice, inadvertent failure to

provide adequate medical care, or simple negligence also do not amount to a constitutional

violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997). Similarly, a mere difference

of opinion between a prisoner and his treating provider about what treatment is appropriate does not give rise to a colorable claim under § 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991).

In order to prevail on a constitutional claim of denial of medical care, Plaintiff must prove that Defendants were deliberately indifferent to his serious medical needs. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360 (2011). To show deliberate indifference, Plaintiff must demonstrate that the denial of medical care was "objectively serious and that defendants subjectively knew about the deprivation and refused to remedy it." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997). A provider acts with deliberate indifference when that provider "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The absence of proof for any one of these elements is dispositive in an action for deliberate indifference under Section 1983.

The term "negligent" or "negligence" as defined under Missouri tort law (Count III) means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the defendant's profession.  MAI 11.06

538.210 RSMo creates a statutory cause of action sounding in medical negligence. In order for Plaintiff to make a submissible claim, she must prove the following: (1) the existence of a duty to be performed by Dr. Bentley; (2) a breach of that duty; and (3) a resulting injury

caused by the breach. *Brown v. Bailey*, 210 S.W.3d 397, 404 (Mo. Ct. App. E.D. 2006) quoting *Ladish v. Gordon*, 879 S.W.3d 601, 604 (Mo. App. E.D. 2006).

<u>**ANTICIPATED LEGAL ISSUES**</u>

As are set out in more detail in Defendants' Motions in Limine, objections to Plaintiff's exhibits, and objections to Plaintiff's designations, evidentiary or procedural issues or problems at trial may include:

1.      Punitive damages should be excluded, or alternatively, any assessment of them should be bifurcated from the liability phase of this lawsuit pursuant to Section 510.263 RSMo. and 538.210.8 RSMo.; FRCP 42(b); and *Evantigroup, LLC v. Mangia Mobile, LLC*, 2013 U.S. Dist. LEXIS 1940, *4-5, 2013 WL 74372 (E.D. Mo. Jan. 7, 2013).

2.      Evidence or references of prior or past litigation, claims, complaints, applications, actions or complications should be excluded from this lawsuit.  *U.S. v. Maxwell,* 643 F.3d 1096, 1101 (8th Cir. 2011); *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008); *U.S. v. Cook*, 454 F.3d 938, 941 (8th Cir. 2016); *Walker v. Kane,* 885 F.3d 535, 540-541 (8th Cir. 2018); *Berry v. Oswalt*, 143 F.3d 1127 (8th Cir. 1998); Fed. R. Evid. 404(b); *McNeal v. SDG Macerich Properties, L.P.*, No. C 07-4015-MWB, 2008 WL 2709572, at *1 (N.D. Iowa 2008); and *United States v. White Plume*, 847 F.3d 624 (8th Cir. 2017).

3.      Lay testimony concerning any medical diagnosis or prognosis of any medical condition and causation should be excluded.  *Lash v. Hollis*, 525 F.3d 636, 639-47 (8th Cir. 2008); FRE 602; *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); and *Am. Mod. Home Ins. Co. v. Thomas,* No. 4:16 CV 215 CDP, 2018 WL 4404723, at *3 (E.D. Mo. Sept. 17, 2018).

4.      No presumption of negligence is indulged in because of an adverse result.  *Swope v. Printz,* 468 S.W.2d 34, 39 (Mo. 1971).  Evidence that Bilal Hill's outcome is itself evidence of negligence or deliberate indifference should be excluded.

5.      Any evidence related to Defendant Advanced Correctional Healthcare's actions or conduct as initially brought in Count II of Plaintiff's Third Amended Complaint or Dr. Schamber's actions or conduct should be excluded.  Plaintiff has given every indication that, despite this Court having entered an order granting Defendant Advanced Correctional Healthcare, Inc.'s ("ACH") Motion for Summary Judgment on the Monell claims set out in Count II of Plaintiff's Third Amended Complaint, and Defendant Schamber's Motion for Summary Judgment on all claims against him, Plaintiff intends to ignore that order and will continue to try to offer evidence of, and litigate, the claims that have now been stricken from this lawsuit.  This is apparent from the hundreds of exhibits contained on Plaintiff's submitted Exhibit List that include ACH training materials, lawsuits, news articles, old ACH promotional materials or statements of its CEO in another state over 18 years ago, and references to the "Schamber review", and is further evidenced by the dozens of hours of deposition designations on all of these topics that plaintiff has listed.  ACH is not a party to Count I of this lawsuit, which alleges deliberate indifference by the two individual defendants (and a corporation cannot be vicariously liable for deliberate indifference (*White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *Martin v. Corizon Corr. Med. Servs.*, No. 5:13-CV-00364 (KGB-JJV), 2014 WL 1779295 (E.D. Ark, Mar. 7, 2014); *Maybin v. Corizon Healthcare*, No. 4:16-CV-525 (CEJ), 2017 WL 3333891, at *14 (E.D. Mo. Aug. 4, 2017), aff'd, 738 F. App'x 377 (8th Cir. 2018)), and is a party to Count III of this litigation—a state law medical malpractice tort claim—for its vicarious liability for the allegedly tortious acts of its employees, Defendants Kelley and Bentley.  ACH, Bentley and

Kelley have all admitted in depositions and stipulations filed with this court that Bentley and

Kelley were employees of ACH, so vicarious liability issues are not in dispute. Evidence of these

issues, whether via depositions, exhibits, live testimony or otherwise should not be allowed into

evidence, as it is legally irrelevant to the claims pending, has no tendency in any way to prove

that Defendants Kelley and/or Bentley were deliberately indifferent and/or negligent in the care

they provided to decedent Hill, is inflammatory and highly prejudicial, and Defendants

anticipate, based upon the designations to date, that Plaintiff will try to "slip in" such information

or material at any opportunity.  The items that should be excluded from evidence, argument or

testimony include, but are not limited to:  a) Evidence related to Dr. Schamber's "review" and

Plaintiff's frequent argumentative reference to it as a "sham" review; b) evidence regarding other

lawsuits against ACH in this or any state; c) Evidence related to ACH "training" materials,

"promotional" materials, PowerPoint presentations, conferences, Dr. Johnson's comments at a

2004 meeting, Summit meetings, or ACH's bids to the jail; or d) Evidence related to ACH

budgetary information, the cost of medical care, or that ACH is a "litigation management

company".

Any evidence of the above is irrelevant as to whether Dr. Bentley or Nurse Kelley were

negligent or deliberately indifferent.

6.     As previously discussed informally with the Court and Counsel, there may be

some issues with regard to deposition transcripts offered into evidence that were poorly

transcribed or do not match the video/audio that may be played to the jury.  Moreover, some

phone calls (video or audio) may be offered for which dates cannot be authenticated.

7.     Evidence of insurance should be excluded.  Fed. R. Civ. Evid. 401, 403, *Ballinger

v. Gascosage Elec. Co-op.,* 788 S.W.2d 503, 513 (Mo. banc 1990) ("A jury may be more likely to

find disputed liability against a defendant it believes to be insured."), *overruled on other grounds by Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. 1991).

8.     Lay testimony regarding thoughts about how defendants were handling Bilal Hill's care, and whether anything could be done to prevent Bilal Hill's death should be excluded as speculative and lacking in foundation.  *Lash*, supra at 639-47; FRE 701; FRE 602; *Am. Mod. Home*, supra at *3; *Kayser*, supra at 281.  Lay testimony regarding whether Bilal Hill's medical condition worsened or deteriorated should be excluded as any such witnesses lack appropriate medical expertise and foundation, the testimony would call for a medical conclusion, and it would be speculative.  *Lash*, supra at 639-47; FRE 602; *Kayser*, supra at 281; and Am. Mos Home, supra.

9.     Golden Rule arguments are designed to encourage the jury to depart from their role of impartiality and step into the shoes of a litigant.  Such arguments have been condemned and uniformly rejected as improper.  *Norman v. Textron, Inc.*, No. 15-4108-CV-C-WJE, 2018 WL 3199496, at *7 (W.D. Mo. May 17, 2018); *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007); *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000); and *Blevins v. Cessna Aircraft Co.,* 728 F.2d 1576, 1580 (10th Cir. 1984).  *Gonzalez v. Shahin*, 2021 WL 6693827, *3, D.N.D., Oct. 26, 2021).

10.     Hearsay statements should be excluded.  FRE 801 and 802.

11.     An expert's opinion must be based upon an established standard of care and not upon a personal standard.  *Dine v. Williams*, 830 S.W.2d 453, 457 (Mo. App. W. D. 1992); *Boehm v. Pernoud*, 24 S.W.3d 759, 762 (Mo. App. 2000); *Blevens v. Holcomb*, 469 F.3d 692, 695 (8th Cir. 2006).

12.     No presumption of negligence is indulged in because of an adverse result.  *Swope v. Printz*, 468 S.W.2d 34, 39 (Mo. 1971); *Hart v. Steel*, 416 S.W.2d 927, 931 (Mo. 1967); *East v. United States of America*, 629 F. Supp.  682, 687 (E.D. 1986); *Hurlock v. Park Lane Med. Ctr., Inc.*, 709 S.W.2d 872, 883 (Mo. App. 1985); *Purdy v. United States of America*, 2006 WL 2990501, *3 (W.D. Mo. 2006).

13.     Any evidence as to what people felt about the care and treatment of Bilal Hill after April 1, 2020, in retrospect, or any subsequent remedial measures, lessons learned, or how someone felt about the diagnosis or from the events of this case or the care and treatment of Bilal Hill are irrelevant and prejudicial. *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) and FRE 407.  See also *U.S. v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011) and *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008); *U.S. v. Cook*, 454 F.3d 938, 941 (8th Cir. 20016). Evidence is unfairly prejudicial if it will "induce the jury to decide the case on an improper basis rather than on the evidence presented." *Walker v. Kane,* 885 F.3d 535, 540-541 (8th Cir. 2018). Evidence of these matters should, therefore, be excluded.  See FRE 401 and 403.

14.     There will be significant legal issues as it relates to Plaintiff's proposed jury instructions.  Plaintiff's proposed jury instructions constitute roving commissions, and fail to properly frame the issues for the jury.  In addition, plaintiff's proposed "ordinary negligence" definition (MAI 11.05) absolutely does not apply.

15.      Evidence that defendants should have done whatever it took to ensure a certain outcome or that the standard of care is anything other than as defined by Missouri law.  "Standard of care" is a term of art within a specific definition, which is not based on what the jury, experts, or other members of the community believe is safe.  *Swope*, supra at 40. *Ladish,* supra at 634; MAI 11.06; *Blevens v. Holcomb*, 469 F.3d 692, 694 (8th Cir. 2006); *McLaughlin v. Griffith*, 220

S.W.3d 319, 322 (Mo. App.  S.D. 2007); *see also State Bd. of Registration for Healing Arts v. McDonagh*, 123 S.W.3d 146, 159 (Mo. 2003); *Boehm v. Pernoud*, 24 S.W.3d 759, 762 (Mo. App. E.D. 2000); *Burke v. Skaggs,* 867 A.2d 213, 217 (D.C. Ct. App. 2005); *Kehle v Andriani* 2009 WL 5511550, *7 (Conn. Sup. Ct. Dec. 18, 2009); *Henson v. Mobile Infirmary Assn.*, 646 So.2d 559 (Ala. 1994); and *Palandijian v. Foster*, 842 N.E.2d 916, 920-921 (Mass. 2006).

16.     Plaintiff may seek to introduce evidence through testimony of witnesses or experts that Dr. Bentley or Nurse Kelley "did not care" about Bilal Hill or evidence as to what Defendants thought about Bilal Hill.  Any such evidence calls for speculation, would lack foundation, and would be argumentative.  *Am. Mod. Home Ins. Co. v. Thomas,* No. 4:16 CV 215 CDP, 2018 WL 4404723, at *3 (E.D. Mo. Sept. 17, 2018); *EEOC v. HBE Corp.*, 135 F.3d 543 (8th Cir. 1998); *U.S. v. Hawkins*, 796 F.3d 843 (8th Cir. 2015); *Scenic Holding, LLC v. New Board of Trustees of Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 667 (8th Cir. 2007); *U.S. v. Stierwalt*, 16 F.3d 282, 286 (8th Cir. 1994); FRE 403 and FRE 611(a).

17.     Lay testimony regarding whether Bilal Hill's medical condition worsened or "deteriorated" or Bilal Hill "suffered" should be excluded.  Any such testimony calls for speculation and lay witnesses lack foundation to provide any such testimony.  *Lash v. Hollis*, 525 F.3d 636, 639-47 (8th Cir. 2008). Lay testimony concerning a medical diagnosis, future medical prognosis, or appropriate medical treatment thereof is beyond the scope of testimony permissible under FRE 701.  In addition, lay testimony concerning medical causation cannot be based on the personal knowledge of the witness, but must be supported by an expert opinion.   FRE 602 and *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).  See also, *Am. Mod. Home Ins. Co. v. Thomas,* No. 4:16 CV 215 CDP, 2018 WL 4404723, at *3 (E.D. Mo. Sept. 17, 2018); *Lake v. McCollum*,

295 S.W.3d 529, 533 (Mo. App. W.D. 2009)(*quoting Hickman v. Branson Ear, Nose & Throat, Inc.*, 256 S.W.3d 120, 124 (Mo. Banc 2008).

18.     Plaintiff's expert witnesses may seek to describe conduct of the medical providers as "deliberate indifference".  Such statements invade the province of the jury, as they go to the ultimate issue.  FRE 704(a), *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir.1998); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995); and *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996).  For other case cites, see these Defendants' Motions in Limine.

19.     Testimony from one witness commenting on another witness' testimony or the truthfulness or honesty of another witness is not admissible.  FRE 608(a), *U.S. v. Azure*, 801 F.2d 336, 341 (1986); *Homan v. United States*, 279 F.2d 767, 772 (8th Cir.), *cert. denied*, 364 U.S. 866, 81 S. Ct. 110, 5 L.Ed.2d 88 (1960); and *United States v. Price*, 722 F.2d 88, 90 (5th Cir. 1983). *Westcott v. Crinklaw*, 68 F.3d 1073, 1976 (8th Cir. 1995).  U.*S. v. Aguayo-Delgado*, 220 F.3d 926 (8th Cir. 2000); *Renda v. King*, 347 F.3d 550, 553 (3rd Cir. 2003).  See also *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203 (2015) and FRE 608(a).

20.     Plaintiff should be precluded from mentioning or suggesting that there were any defendants that were previously dismissed or that any other person or entity was previously a defendant.  There is no probative value, and the evidence would only serve to confuse the jury and waste time.  *Achterberg v. Albaugh, LLC*, 2017 WL 5924262, *2 (W.D. Mo. 2017); *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corporation*, 2010 WL 11515184, *2 (W.D. Mo. 2010); *Wheeler v. Lynn*, 2012 WL 2994270, *2 (W.D. Mo. 2012); *Moore v. Bannon*, 2012 WL 2154274, *7 (E.D. Mich. 2012); *Bryce v. Trace, Inc.*, No. CIV-06-775-D, 2008 WL 906142, *3 (W.D. Okla. March 31, 2008). See also FRE 403; *L'Etoile v. New England Finish Systems, Inc.*, 575 F. Supp.

2d 331, 340 (D.N.H. 2008); and *Shepard v. United States*, 290 U.S. 96, 104, 54 S. Ct. 22, 26, 78

L.ed 196 (1933).

<div align="center" style="text-align:right">

Respectfully submitted,

*/s/ J. Thaddeus Eckenrode*
J. Thaddeus Eckenrode MO Bar No.:  31080
ECKENRODE-MAUPIN, Attorneys at Law
11477 Olde Cabin Rd., Ste. 110
St. Louis, MO 63141
(314) 726-6670 (Telephone)
(314) 726-2106 (Fax)
jte@eckenrode-law.com
*Attorney for Defendants Dionne Kelley, Dr. Arthur*
*Bentley, and Advanced Correctional Healthcare,*
*Inc.*

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via electronic mail and the court's electronic filing system on this 5th day of May, 2022 to the following:

**Brandon Gutshall**
**Charles Eblen**
Shook Hardy, LLP – Kansas City
2555 Grand Blvd, 19th Floor
Kansas City, MO 64108

*/s/ Joan Monninger*