IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADY MAAKIA SMITH,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | Cause No. 4:20-cv-00804-JMB |
| v.     ) | |
|     ) | |
| ADVANCED CORRECTIONAL     ) | |
| HEALTHCARE, INC., *et al.*     ) | |
|     ) | |
|     Defendant(s).     ) | |

## *DECLARATION OF JESSICA YOUNG*

I, Jessica Young, being of lawful age and duly sworn upon my oath, and based upon my personal knowledge, state the following:

1.    I am over the age of 18 years and am fully competent to make this Declaration.

2.    I am the President of Advanced Correctional Healthcare, Inc. (ACH).

3.    I am familiar with the Verdict reached (Doc. 262) and Judgment entered (Doc. 264) in this case.

4.    I am familiar with ACH's operations at numerous jails located in various states throughout the United States.

5.    Such operations are highly decentralized, occurring at numerous jails in 19 states, as opposed to a central location in a single state.

6.    In connection with ACH's operations, ACH employs nearly 2000 employees and contractors who in turn provide medical care to over 34,000 patients at jails located in 19 states.

7.     I am familiar with the needs of municipal, state, and other authorities who rely upon ACH and similar companies to provide private, qualified, licensed medical care to tens of thousands of patients housed in jails operated by those authorities throughout the United States.

8.     Private medical care such as that provided by ACH is necessary in jails throughout the United States because many municipal, state, and other authorities do not have the capacity, ability, or funds to provide qualified, licensed medical care on their own.  ACH's size, national vendor relationships (such as with pharmacies, a significant cost of correctional medicine), and economies of scale make ACH a cost-effective alternative to providing unlicensed care, or no care at all.

9.     I am familiar with the accounts used to pay ACH's nearly 2000 employees and contractors at jails in 19 states in a timely manner, ACH's cash flow in connection with the company's operations, and ACH's available assets.

10.     Any efforts by Plaintiff in this matter to execute upon the Judgment via collection efforts, such as via garnishments of the accounts used to pay ACH's nearly 2000 employees and contractors working at jails in 19 states in a timely manner, or efforts to attach accounts that would freeze those accounts, would impact ACH's cash flow and its ability to pay its employees and contractors in a timely manner.  The majority of funds received through ACH's contracts with municipal, state, and other authorities goes to paying qualified, licensed, frontline caregivers their wages and earnings to provide medical care to their patients.

11.     To the extent any such collection efforts would impact ACH's ability to pay its employees and contractors in a timely manner, those efforts would impact ACH's

ability to provide medical care to over 34,000 patients in 19 states.  In particular, ACH would have to terminate its clients immediately, without providing contractual notice. The municipal, state, and other authorities relying on ACH to provide patient care would then have to rely on unlicensed care, or having no care at all; would have less choice in finding a company to replace ACH; and likely would have to pay more with worse contract terms than are currently available through ACH.

12.     In light of the above considerations, ACH would be irreparably harmed by collection efforts in connection with the Judgment during the pendency of ACH's post-trial motions and any appeal in this case.

13.     In addition, the more than 34,000 people ACH serves through its qualified, licensed medical care provided by nearly 2000 employees and contractors located in 19 states  would be irreparably harmed by any collection efforts in connection with the Judgment during the pendency of ACH's post-trial motions and any appeal in this case.

14.     ACH does not have the assets, cash flow, or other means of posting a supersedeas bond in connection with the Judgment entered in this case, except to the extent of its insurance coverage in connection with this matter, which amounts to $1 million.

15.     This Declaration was signed by me of my own free will and without any coercion, stress, or undue influence.

FURTHER DECLARANT SAYETH NOT.

Consistent with 28 U.S.C. § 1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 30, , 2022.

_____
Jessica Young