# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 12, 2023

Mr. Charles C. Eblen
SHOOK & HARDY
2555 Grand Boulevard
Kansas City, MO  64108-2613

RE:  22-2644  Lady Maakia Charlene Smith v. Richard Lisenbe, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

HAG

Enclosure(s)

cc:   Mr. Michael G. Berry
      Clerk, U.S. District Court, Eastern District of Missouri
      Mr. Brandon K. Gutshall
      Ms. Lindsey K. Heinz
      Mr. Ryan J. McDaniels

       District Court/Agency Case Number(s):   4:20-cv-00804-JMB

# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 12, 2023

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 22-2644  Lady Maakia Charlene Smith v. Richard Lisenbe, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant and appeared on the brief was Charles C. Eblen, of Kansas City, MO. The following attorney(s) also appeared on the appellant brief; Brandon K. Gutshall, of Kansas City, MO, Lindsey K. Heinz, of Kansas City, MO.

Counsel who presented argument on behalf of the appellees and appeared on the brief was Michael G. Berry, of Jefferson City, MO.

The judge who heard the case in the district court was Honorable John Max Bodenhausen.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

HAG

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:20-cv-00804-JMB

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2644
_____

Lady Maakia Charlene Smith, personal representative
of the Estate of Bilal Hasanie Hill, deceased

*Plaintiff - Appellant*

v.

Richard Lisenbe, in his official capacity as Sheriff of Phelps County;
Kelly Ratcliff; and
Joe Taylor, Lieutenant

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri
_____

Submitted: April 12, 2023
Filed: July 12, 2023
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

  Bilal Hasanie Hill was in pretrial custody at Phelps County Jail for about six months. After he was released, Hill sued Lieutenant Joe Taylor, Officer Kelly Ratcliff, and Phelps County, Missouri, for damages from inadequate medical care

during his pretrial detention. The district court[1] awarded Taylor, Ratcliff, and Phelps County summary judgment. We affirm.

## I. Background

In October 2019, Ratcliff booked Hill into jail as a pretrial detainee. Hill weighed in at 196.5 pounds, but his weight and health gradually declined.

Starting on January 13, 2020, Hill received medical attention related to pain in his neck, back, shoulder, and chest that began about a week earlier. Dr. Bentley characterized the injury as a "muscle strain" and recommended Hill take Tylenol. About one week later, Hill asserted in a "sick call request form" that he was "misdiagnosed" regarding the pain in his neck, back, and shoulder. Within a few days, Dr. Bentley acknowledged Hill's pain, but once again recommended he take Tylenol.

A number of formal complaints followed. On February 6, Hill filed a grievance in which he again claimed he was misdiagnosed and asked to be hospitalized because of his "extreme pain." Taylor responded by noting Hill saw the doctor multiple times, was provided Tylenol, and was seen regularly exercising. Taylor wrote that he would follow up with Hill after the doctor saw him again. That same day, Taylor asked staff to "keep an extra eye on" Hill and let him know if Hill was exercising.

Hill filed a second grievance on February 12. While Hill did not expand upon where he was experiencing pain, he requested to be hospitalized so he could be correctly diagnosed. Dr. Bentley apparently disagreed, as evidenced by his instruction that same day for Hill to take Tylenol as needed. At this time, Hill weighed 190 pounds.

---

[1]The Honorable John M. Bodenhausen, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

-2-

On February 16, Hill filed yet another medical grievance. Hill asked to be seen by a doctor who had "access to the proper medical equipment" to correctly diagnose him, reasoning that he should not have to take "thousands" of milligrams of Tylenol and ibuprofen to address the "severe pain" in his rotator cuff and back. Taylor responded that Hill's "medical condition is being re-evaluated by a team of [doctors at Advanced Correctional Healthcare]." The next day, Hill filed a fourth medical grievance wherein he asked to be sent to the hospital in light of the ongoing pain. Around this time, Taylor requested a medical professional provide a second opinion regarding Hill's care.

In the meantime, while waiting for a second opinion, Hill's condition deteriorated. On February 25, Hill filed a medical grievance that explained he was losing feeling in his arm, had a growth in his neck, and continued to experience severe pain. Hill submitted similar complaints over the next two weeks.

On March 9, Dr. Schamber followed up on Taylor's request for a second opinion regarding Hill's medical care. In an email to Taylor, an Advanced Correctional Healthcare employee forwarded the following statement representing Dr. Schamber's assessment:

> The case has been reviewed, and it appears from the record that the patient is receiving objectively reasonable care based on the complaints given. One recommendation is to consider an activity log to see if patient subjective complaints match activity level as it is documented that the patient has a rather normal exam.

In mid-March, a prison official moved Hill to a "holdover cell." Taylor apparently approved the move for medical observation purposes, which allowed prison officials to regularly monitor Hill. While in the holdover cell, Hill often screamed and cried for help, which resulted in at least some medical attention. Ratcliff was listed in a handful of shift supervisor reports as being "present" while Hill was in the holdover cell, but, like the district court, we discern no evidence as to who observed Hill and his condition during this time period.

On April 1, Dr. Bentley referred Hill to an emergency room after he could not determine the reason for his pain and observed Hill weighed 168 pounds—a rapid decline from mid-February. The following day, Hill was evaluated by a physician who told Hill he had a "significant cancer" that was terminal. In a deposition, that physician described Hill as "emaciated," "skeletal," and having an "odor" that indicated "he was in a dying process."

Following his compassionate release from custody, Hill filed this lawsuit in federal court. During the pendency of his case, Hill passed away. His sister, Lady Maakia Charlene Smith, took over the case as the personal representative of Hill's estate. Smith amended the complaint and, as relevant here, asserted claims for deliberate indifference against Taylor and Ratcliff; unconstitutional policies, practices, or customs against Phelps County; and medical negligence against Dr. Bentley.

The district court awarded Taylor, Ratcliff, and Phelps County summary judgment.[2] The district court concluded there was no genuine issue of material fact on the deliberate indifference claim against Taylor and Ratcliff; Taylor and Ratcliff were entitled to qualified immunity on the deliberate indifference claim; and the claim against Phelps County failed because Taylor and Ratcliff did not violate the Constitution.

Although the district court granted summary judgment in favor of Taylor, Ratcliff, and Phelps County, certain claims against other defendants (including Dr. Bentley) proceeded to trial. A jury returned a verdict in favor of Smith, awarding over eight million dollars in compensatory and punitive damages. After the district

---

[2] At summary judgment, the only remaining claim against Sheriff Richard Lisenbe was in his official capacity. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Smith's claim against Lisenbe, therefore, is a claim against Phelps County.

-4-

court entered final judgment, Smith timely appealed. She asks us to reverse the district court's grant of summary judgment entered in favor of Taylor, Ratcliff, and Phelps County.

## II. Analysis

"We review *de novo* the district court's grant of summary judgment, viewing the facts in the light most favorable to the non-moving party." *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022). A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Deliberate Indifference

Smith argues the district court erred by entering summary judgment in favor of Taylor and Ratcliff on her claim for deliberate indifference to a serious medical need. "A pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment," *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021), which prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Nonetheless, a pretrial detainee receives "at least the same protections that convicted prisoners receive under the Eighth Amendment." *Perry*, 993 F.3d at 587; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Eighth Amendment, in turn, prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which in this context means a state official cannot be deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To succeed on a Fourteenth Amendment deliberate indifference claim, "a plaintiff must demonstrate that a pretrial detainee had an objectively serious medical need that the defendants knew of and yet deliberately disregarded." *Reece v. Hale*, 58 F.4th 1027, 1030 (8th Cir. 2023) (quoting *Ivey v. Audrain Cnty.*, 968 F.3d 845, 848 (8th Cir. 2020)). Whether Hill had an objectively serious medical need is not in

-5-

dispute. Instead, the dispute revolves around whether Taylor and Ratcliff knew of Hill's serious medical need and yet deliberately disregarded it. For this element, disregard of a pretrial detainee's serious medical need "must rise to the level of criminal recklessness." *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023). Further, "the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009).

Under this standard, we conclude there is not a genuine issue of material fact as to whether Taylor or Ratcliff were deliberately indifferent. A correctional officer's deference to a medical professional regarding a pretrial detainee's medical care, standing alone, does not create a genuine issue of material fact on deliberate indifference to serious medical need. *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("A prison official may rely on a medical professional's opinion if such reliance is reasonable."); *cf. Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Here, Taylor and Ratcliff were generally aware that Hill was experiencing medical issues. Critically, however, Hill received regular medical attention from mid-January until his hospitalization on April 1. And, in mid-March, about two weeks before Hill's hospitalization, a doctor responded to Taylor's request for a second opinion by stating Hill's medical care was objectively reasonable. *Cf. Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription.").

Smith nonetheless focuses on Hill's time in the holdover cell. Because Hill testified in his deposition that he was screaming and crying while he was in the holdover cell, Smith speculates it would be impossible for someone not to discern a serious medical need. Smith, however, points to nothing in the record showing Taylor or Ratcliff deliberately disregarded Hill's condition while he was in the holdover cell during the final weeks of his pretrial detention. Instead, Smith points

to evidence that Phelps County employees were generally aware that Hill was suffering. This evidence, however, does nothing to address the focus of our inquiry: whether Taylor or Ratcliff deliberately disregarded Hill's serious medical need.[3]

Smith also analogizes this case to *McRaven*. In *McRaven*, we noted a prison official may rely on a medical professional's opinion if reliance on that opinion "is reasonable." 577 F.3d at 981. But we nonetheless concluded the district court did not err by denying qualified immunity to a prison official who cited his reliance on a medical professional's opinion. *Id.* We reasoned the prison official could not rely on the medical opinion because the official knew the pretrial detainee consumed a dangerous combination of drugs; knew the pretrial detainee "exhibited symptoms of extreme intoxication"; and knew, or reasonably should have known, the medical official based his evaluation of the pretrial detainee on faulty information. *Id.* The facts here are markedly different. There is nothing in the record suggesting, for example, that Taylor or Ratcliff withheld relevant information from medical professionals. *See Reece*, 58 F.4th at 1033 (distinguishing *McRaven* on similar grounds). And, as we detailed above, there is no material evidence that Taylor or Ratcliff, in light of the ongoing medical treatment, deliberately disregarded Hill's serious medical need.[4]

In sum, we conclude there is no genuine issue of material fact as to whether Taylor or Ratcliff violated the Fourteenth Amendment. Because we conclude there is no constitutional violation, we need not address whether Taylor and Ratcliff are

---

[3]Smith argues the adverse inference rule applies because the videos depicting Hill in the holdover cell were destroyed. "The adverse inference rule applies only 'when a party has relevant evidence *within its control* which it fails to produce.'" *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 761 n.3 (8th Cir. 2005) (quoting *Rockingham Machine-Lunex Co. v. NLRB*, 665 F.2d 303, 304 (8th Cir. 1981)). Here, the videos were automatically deleted after ninety days, and we discern no basis for concluding Taylor or Ratcliff failed to produce the videos.

[4]For this reason, Smith's reliance on *Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010), is also misplaced.

-7-

entitled to qualified immunity under the second prong of the analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### B. *Monell* Liability

The district court awarded summary judgment in favor of Phelps County because there was no underlying constitutional violation by Taylor or Ratcliff. Smith argues the district court erred because there is a genuine issue of material fact on the deliberate indifference claim against Taylor and Ratcliff. Broadly, a local government can be held liable for a constitutional violation, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), but it cannot be liable unless there was an unconstitutional act by one of its employees. *See Webb v. City of Maplewood*, 889 F.3d 483, 486–87 (8th Cir. 2018). Because we have concluded Taylor and Ratcliff did not violate the Fourteenth Amendment, the district court did not err by awarding Phelps County summary judgment on the *Monell* claim. *See Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019).

### III.  Conclusion

We affirm the judgment of the district court.

_____